## JAMES STEWART v. DENNIS CODER.

1. Judgments against the vendor of land, who retains the legal title for the security of the unpaid purchase-money, being liens attaching not only on the naked legal title but also upon the unpaid purchase-money, whether secured by bond or otherwise, cannot be disturbed by an attachment subsequently issued, for the money due by the vendee, upon a judgment subsequently rendered against the vendor.

2. When a sale is made to delay, hinder, and defraud creditors, the proper manner to test the validity of the transaction is by a judicial sale at the suit of one or more of the creditors.

ERROR to the Common Pleas of Huntingdon.

*May 30.* James Stewart, who was the plaintiff below and in error, entered up judgment against a firm of Love & Oyer, on the 13th October, 1843, upon which he issued a *fieri facias* with clause of *sci. fa.* on the same day. To this writ the sheriff returned that the defendants had no goods in his bailiwick, but that he had attached all moneys due or owing to them or either of them by the several persons named in the return, among whom was Dennis Coder, the defendant below and here.

It appears that in 1837 Oyer sold a tract of land to Coder by articles of agreement for $4,000, for which Coder gave his bond, but the deed was not to be made until the money should be paid. No deed was made or delivered until the 3d February, 1843, a few days previous to which Oyer receipted to Coder for the purchase-money.

Judgments for a very large amount had been obtained against them before the 13th October, 1843, by various creditors of Love & Oyer, and of Oyer, upon one of which, obtained 5th July, 1843, the property sold to Coder was seized and sold on the 18th January, 1848, for $1,000. The proceeds of this sale were distributed to judgment-creditors, whose liens were all anterior to that of the plaintiff.

On the 19th April, 1849, the issue between Stewart and Coder upon the *sci. fa.* was tried, and resulted in a verdict for the defendant. The trial turned upon the question of fraud in the transactions between Coder and Oyer relating to the purchase of the land, and upon the question whether the plaintiff had a remedy in this proceeding. The disposition which this court makes of the case, renders it unnecessary to present any more extended view of the facts than is exhibited in the above summary. The statement of facts being thus curtailed, it is not possible, without doing injustice to President TAYLOR, to give those portions of his luminous and able charge that relate to the ground upon which this court decides the case. The points presented below, and the assignment of errors are omitted.

*J. G. Miles,* for the plaintiff in error.

*M'Allister* and *Benedict,* contrà.—If the receipt of the 1st February, 1843, was fraudulent, everything done in pursuance of

it was so, and Coder and Oyer would still stand as vendee and vendor under the agreement of 1837. The judgments anterior to the receipt, if it were fraudulent, would still bind the legal title, and no fraud of Coder and Oyer could destroy the lien or change or diminish the fund. Upon levy and sale the sheriff's vendee would become the owner of that legal title, and all its rights and remedies would vest in him as fully as they were originally in Oyer: Roberts Fraud. Con. 21; Stouffer v. Coleman, 1 Y. 393; Thompson v. Dougherty, 12 S. & R. 455–459; Fasholt v. Reed, 16 S. & R. 266: Chahoon v. Hollenbach, 16 S. & R. 425; M'Mullen v. Werner, 16 S. & R. 18; M'Kee v. Gilchrist, 3 Watts, 230; Richter v. Selin, 8 S. & R. 440; Anwerter v. Mathiot, 9 S. & R. 397.

Creditor has no other way of testing validity of such a transaction than by sale on execution: such a sale by creditor is the only way a purchaser can become invested with their rights under the stat. 13 Eliz.: Rob. Fraud. Con. 423; 12 S. & R. 458; Foster v. Walton, 5 Watts, 379. The respective rights of the original vendor and vendee must be preserved, or specific performance could never be decreed, nor could their agreement be perfected. By levy and sale of Oyer's title the purchaser could compel payment of the balance of the purchase-money. He could make a deed, and in no other way could the title be perfected, or the rights of the original vendee be preserved.: 3 Watts, 232.

The rights of creditors are *one*, they cannot separate. One set cannot defeat the prior vested rights of others. The first judgments were liens upon Oyer's legal title, if his conveyance to Coder was fraudulent, and the holders of them had a right to proceed to levy and sale, and to have the proceeds distributed among them according to priority. These were vested rights which subsequent judgment-creditors of Oyer could not take from them. By the sheriff's sale on one of those first judgments passed the *right to receive the unpaid purchase-money.* And this having been done for the benefit of creditors, part of those creditors cannot attach that unpaid purchase-money, and take from the sheriff's vendee what became his by a sale for their benefit. We deny the right of creditors to separate their interests, and then to pursue different and conflicting remedies, each to secure the same fund, and both to be successful: Broom's Maxims, 322; 2 Doug. 472; Ib. 697; Cowper, 200; Ib. 792.

The opinion of this court was delivered by

Rogers, J.—The defendant takes defence on two grounds. 1st.

He denies the fraud charged by the plaintiff, and insists that the transaction between him and Oyer was *bonâ fide*, and for a valuable consideration; and, secondly, admitting that it was fraudulent as being intended to delay, hinder, and defraud creditors, the plaintiff has no remedy in this action. The defendant contends that the lien creditors of Oyer, prior to the 28th October, 1843, when the bond from Coder to Oyer was attached, were entitled to the money, if any was due; that they proceeded to levy and sale of the land of the vendor, and that the proceeds of sale were appropriated to their use. The court, after stating the facts, presented the case to the jury in a double aspect; on the first plea referring the point of fraud to the jury; and next charging them in express terms, that granting it was fraudulent, the plaintiff was not entitled to recover, because the judicial sale of the vendor's interest exhausted the rights of Oyer's creditors, and left nothing for the attaching creditor. As on the last point there was not a single disputed fact, the charge of the court was in effect, that the jury should find a verdict in favour of the defendant. If the court was right in this position, it is a flat bar to the plaintiff's action, and consequently supersedes the necessity of inquiring into the first point, to which all the errors in the rejection and admission of testimony relate. Whatever errors may have been committed as regards them are entirely immaterial, for in this aspect, *quacunque via data*, the case may be considered, the defendant is entitled to judgment.

The plaintiff obtained judgment the 28th October, 1843. Previous to that time, viz., between the 16th June and 5th July, 1843, divers judgments were rendered in favour of different persons, which remained unpaid, to an amount which, in any event, exceeded the money due from Coder to Oyer. On the last judgment, Allen Wilson & Co. issued an *alias vend. exponas* to January term, 1848, on which the interest of Oyer was seized and sold by the sheriff for $1,000, and a deed duly acknowledged. This fund was appropriated by an auditor, as far as it would reach, to the payment of the judgments which were liens on the interest of Oyer. When the vendor of land retains the legal title for the security of unpaid purchase-money, a judgment against him is a lien not only on the naked legal title, but also attaches on the money remaining due and unpaid, whether secured by bond or otherwise. This has been repeatedly ruled; and, from this, it follows, that, the judgments being liens on the money due from Coder to Oyer, the liens cannot be disturbed or affected by an attachment subsequently issued on a judgment subsequently rendered; for, if it could, the effect would

be to impair, if not destroy, the lien of the judgment creditors. They would be utterly worthless in their hands as a security for their debts. As the creditors have a lien, it may be enforced by a levy and sale, which passes all the rights and remedies of the vendor to the sheriff's vendee, who become, by virtue of it, not only the owner of the legal title, but of all the unpaid purchase-money. This is abundantly clear on authority. The case of Stouffer *v.* Coleman, 1 Y. 393, rules, that as between vendor, who retains the legal title, and the vendee, the former has a lien for the unpaid purchase-money; and that this lien is transferred to the vendee of the sheriff, is proved by Thomas *v.* Dougherty, 12 S. & R. 455, 459; Fasholt *v.* Read, 16 S. & R. 266; Chahoon *v.* Hollenbach, 16 S. & R. 425; M'Mullen *v.* Werner, 16 S. & R. 18; 9 S. & R. 402; 8 S. & R. 440; M'Kee *v.* Gilchrist, 3 W. 230. In M'Mullin *v.* Werner, the court say, that a judgment against the vendor binds his legal estate and all the interest he has in the land, at the time of the rendition of the judgment; that the sheriff's vendee stands in the situation of the vendor; that he is entitled to the unpaid purchase-money, the payment of which he can enforce by an action of ejectment against the *terre tenants* of the land. To the same effect are all the cases cited. Where a sale is made to delay, hinder, and defraud creditors, the proper manner to test the validity of the transaction is by a judicial sale at the suit of one or more of the creditors. This does justice to the rights of all. The money being substituted for the land, is distributed by the court among the creditors, according to their respective priority of liens. To permit one of the creditors by the summary process of an attachment *fi. fa.* to levy on the debt, will interfere with the regular course of judicial proceedings, and will be unjust, because it will compel the debtor to pay the debt twice, that is, to the attaching creditor, and the vendee of the sheriff; or, what is worse, either the creditors or the vendee will lose the money, as the inevitable effect will be, to diminish by the amount the attaching creditor recovers, the liens of the judgment creditors of the vendor. It would be against every principle of right, that one should be permitted to defeat the united rights of other and more vigilant creditors. The creditors who obtained judgments against the vendor, as has been before shown, have liens on the legal title extending to the unpaid purchase-money. They have the right to proceed to levy and sale of the land, and to distribute the money among the creditors, according to priority of date. This they have done, and shall it now be permitted that a single creditor shall interfere with

that right, as will be the necessary consequence if he is allowed to attach the unpaid purchase-money for the exclusive payment of his debt? It is, certainly, not unreasonable for the defendant, whatever may be his demerits, to ask that he shall not be compelled to pay the same debt to the sheriff's vendee and the attaching creditor also.

Judgment affirmed.