## GEORGE BROOKE v. JOHN BORDNER.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 6, 1889—Decided April 15, 1889.
[To be reported.]

1. Where the legal title to land is held as a security for money advanced to aid the owner in the purchase thereof, and the holder mortgage the land, his mortgagee will take the title, the owner being in possession, subject to the payment by the latter of the amount advanced to him by the mortgagor.

(a) Noll bought land at public sale, and to secure Bordner, who advanced part of the purchase money, the title was taken in Bordner's name, under an agreement to convey to Noll on repayment of the advance: Noll was in possession exercising acts of ownership when Bordner mortgaged the land to Brooke.

2. In a scire facias upon his mortgage with notice to Noll, Brooke was entitled to judgment for the amount of the mortgage, to be released as to Noll on payment by the latter to Brooke of the amount advanced by Bordner, with arrears of interest and costs.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 14 January Term 1889, Sup. Ct.; court below, No. 35 October Term 1887, C. P.

On September 24, 1887, a scire facias sur mortgage was issued in a cause wherein George Brooke, guardian, etc., was plaintiff and John Bordner, Sr., was defendant, with notice to terre tenants. An affidavit of defence having been filed by George Noll, as a terre tenant, of a portion of the land covered by the mortgage, on January 19, 1888, the parties submitted the cause to *Mr. Daniel H. Wingerd*, as a referee, under the provisions of the act of May 14, 1874, P. L. 166.

On June 5, 1888, Mr. Wingerd filed his report, which was as follows:

From the testimony the referee finds the following facts:

In the year 1874 George Noll bought two tracts of land, situate in Bethel township, Berks county, from Jacob Dubbs,

executor of Michael Houtz, deceased, the one tract containing 38 acres and 98 perches, and the other tract 7 acres and 134 perches.

At some time prior to the public sale of the said tracts of land, Geo. Noll entered into an agreement with John Bordner, Sr., to the effect that the said George Noll was to buy the property for himself, at the rate of $105 per acre for the one tract, and for the other $20 and some cents, and that John Bordner, the defendant in this case, was to assist him in raising the money to pay for the property.

This agreement between Noll and Bordner was afterward reduced to writing, and left in the possession of Squire Kerr, who has since died, and an extended search among his papers has been made and no agreement found.

At the time of the sale of the property bought by Noll, he was living upon the premises and has remained in possession of them up to this time. Noll also did the bidding upon the property, which was knocked off to him; John Bordner was present, but did not bid. Notes were given for the down money by Noll, upon which Bordner was security, and the subsequent payments were made as follows: The entire sum to be paid by Noll amounted to $4,281.89, and as Noll's wife was a daughter of Michael Houtz, deceased, she had her portion of the purchase money to get as one of the heirs of the estate, so that her share was allowed as a payment for so much on the property, and Noll paid in cash in addition such an amount as with his wife's share aggregated $1,218.89.

Bordner about that time gave Noll five or six hundred dollars in cash, and became security upon a number of notes for him to raise additional money, and when the deed was executed and delivered, it was made to Bordner with the understanding that as soon as the notes upon which Bordner was security were paid, and he was free from liability, he was to deed the property over to Noll, the actual owner. In pursuance of this arrangement, Noll paid from time to time, on account, and finally owed, and still owes to Bordner the sum of $1,600, which indebtedness is in the shape of three notes, as follows: One note dated April 2, 1877, for $1,000, with interest from April 1, 1886; one note for $500, dated April 1, 1886, and one note for $300, dated April 1, 1870, upon which there is a credit of $200;

and, as security for the payment of said several sums, Bordner still holds the deed.

Noll has received the entire product of the land, has paid the taxes for nearly the same period, and insured the property and paid the premiums thereon, and asserted all the rights of ownership. Bordner never asked for nor received any rent for the premises, and paid no taxes, until after a certain period, when he had the property assessed in his own name for a special purpose.

About the time Bordner had the two tracts assessed in his own name, which Noll had purchased under the above-stated understanding, and for which Bordner held the deed, he negotiated a loan on the two tracts which Noll had purchased, and another tract which he himself owned, the latter containing 25 acres and 83 perches. The amount of this loan was $4,000 payable in three years, at five and a half per cent interest, and was secured by a mortgage upon the three tracts, dated March 27, 1886, and given to George Brooke, guardian of E. Brooke's children. This loan was negotiated by Bordner, without the knowledge of Noll, and without notice to him, and he did not know of the matter until informed of it by an outside party, after the mortgage had been given and duly recorded.

Some time after the mortgage was placed upon the property above mentioned, Bordner became embarrassed and made an assignment for the benefit of creditors to John Obold. Default having been made in the payment of the interest upon mortgage by Bordner, a scire facias was issued thereon to No. 35 October Term 1887, and forms the basis of this suit. Shortly after John H. Obold, assignee as above stated, brought suit to No. 44 October Term 1887, against Noll for the purpose of recovering the balance of $1,600, with the interest acknowledged to be due from Noll to Bordner, on account of moneys loaned by Bordner to him in the transaction of the purchase of the two tracts in the possession of Noll.

At the time the agent of the mortgagee examined the property, with reference to making the loan, no inquiry was made by him as to the title of Noll, who was in possession of the two tracts, it being taken for granted that he was in possession simply as the tenant of Bordner, and therefore the actual title of Noll to the land was unknown to the mortgagee and his

agent. No deed was ever tendered to Noll by Bordner either before or since the placing of the mortgage.

The question in dispute in this case, upon the facts as found above, therefore, is whether or not George Brooke, guardian, the mortgagee, can recover a judgment under the scire facias against the land in the possession of Noll, and for which Bordner held the deed at the time the mortgage was given, or in such manner as to bind the amount due from Noll to Bordner.

With regard to the first tract mentioned in the mortgage, containing 25 acres and 83 perches, owned by Bordner and not in the possession of Noll, it is clear that the mortgagee is entitled to judgment, and as much of the mortgage as the proceeds of the sale of that tract will pay, he will recover.

With regard to the other two tracts in the possession of Noll, one containing 38 acres and 98 perches, and the other 7 acres and 134 perches, and included in the mortgage, the right of the mortgagee to recover a judgment which would enforce their sale, and the application of the proceeds to the mortgage, is not by any means too clear, and, we think, cannot be sustained as a sound legal proposition.

When Brooke, guardian, contemplated making a loan upon tracts of land which were in the visible and notorious possession of a third party, it was his duty, either by himself or his agent, who examined the property as to its value, to make inquiry as to his title; and the failure to do so affects the mortgagee with notice of the title of Noll, in this case, in the same manner as if he had made the inquiry and learned the actual facts by the exercise of proper diligence, and then had taken a mortgage thereon.

If Noll, at the time of the making of the mortgage, or at any time since had paid the full amount of his indebtedness to Bordner, he would certainly have a full defence against the present proceeding under scire facias against Bordner, and himself, as terre tenant: Rowe v. Ream, 105 Pa. 543; Hottenstein v. Lerch, 104 Pa. 454. How, then, does the fact that a portion of the debt due from Noll to Bordner is still unpaid, affect the rights of the mortgagee in this proceeding, and the ability of Noll to defend against his proceeding?

Bordner, holding the deed for the two tracts of land under his agreement with Noll, had, according to the well settled law

of this state, in effect, a mortgage upon the property for the unpaid balance due him and nothing more; so that when he undertook to convey to Brooke, guardian, as security for the loan, he attempted to make a title to that which he did not possess, and to which he had no legal right which could be transferred by means of the mortgage conveyance; and when Brooke, guardian, took a mortgage upon the property in possession of another, without inquiry as to his title, there being nothing upon record inconsistent with his possession, he took a mortgage upon the property of one person by a conveyance from another, who had no right to convey, and whose only title thereto consisted in the right to recover a certain amount of money from the actual owner. An obligation of this character is not real estate and cannot be made the subject of a mortgage, nor be reached by a scire facias, even if there has been an attempt to place a mortgage thereon; the mortgage, therefore, never attached to this land and can in no sense be a lien on the money due from Noll to Bordner.

In addition to this, as Bordner had made an assignment for benefit of creditors, if Noll paid, or was compelled to pay, the amount still due Bordner, to Brooke, guardian, on his mortgage, he might be compelled to pay the same amount again to the assignee of Bordner; and, as suit has already been brought against Noll by the assignee of Bordner, to recover $1,600 due upon notes upon which the purchase money of this very property was raised, it does not appear how Noll could successfully defend against that suit, as he admits money to be due and owing, and that he had paid the same to another party would not be a sufficient answer. If, however, Noll should pay the assignee of Bordner, after judgment in that suit, then Brooke, guardian, could enforce any claim he might have to that amount of money so paid.

Whatever Brooke's right may be to the amount owed by Noll to Bordner, it must be worked out through some proceeding against Bordner, or his assets, and not against Noll, who is liable to pay Bordner in the first instance, and has no liability whatever to pay Brooke on his mortgage, as the mortgage never attached to Noll's land; and, indeed, if Noll had already paid Bordner before suit, or his assignee, since suit was brought, it is hard to see upon what principle even a pretence or claim

against him or his land could be set up in this proceeding upon a scire facias; and his rights must not be imperiled in order that the money, or any portion of it, justly due from Bordner to Brooke, shall be paid.

There is no reason why the rights of Brooke, under the mortgage, may not be enforced against the money in the hands of the assignee of Bordner, which Noll will certainly be compelled to pay upon judgment obtained against him, and upon the delivery of a deed to him, when the money is so paid to the assignee.

The referee therefore renders judgment upon the mortgage in favor of the plaintiff, George Brooke, guardian, against John Bordner, Sr., the defendant, for the sum of $4,482.17, with costs of suit, limiting the lien of the said judgment and the executions which may be issued thereon, to the tract of land first described in said mortgage, containing 25 acres and 83 perches.

To the foregoing report of the referee, the plaintiff filed various exceptions relating to the referee's findings of facts, and the following exceptions to his conclusions of law:

1. The referee erred in holding that the deed of Dubb's executor to Bordner was a mortgage.[1]

2. The referee erred in concluding " the mortgage, therefore, never attached to this land and can in no sense be a lien on the money due from Noll to Bordner." [2]

3. The referee erred in limiting the lien of the judgment, and the executions which may be issued thereon, to the tract of land first described in said mortgage, containing 25 acres and 83 perches.[3]

4. The referee should have held that John Bordner, Sr., was estopped from setting up that the only interest he had in the two tracts claimed by Noll was personalty.[4]

5. The referee should have decided in favor of the plaintiff for the full amount of his claim, with the qualification that upon the payment by George Noll of the amount owing to Bordner, the judgment to be released as to the two tracts in the possession of Noll.[5]

6. The referee should have rendered judgment in favor of the plaintiff.[6]

On July 10, 1888, the referee filed a report upon the said exceptions which was as follows:

The plaintiff, by his attorney, within the required time filed certain exceptions, both to the findings of fact by the referee, as well as to the conclusions of law arising therefrom, and the referee reports thereon as follows:

With regard to the exceptions as to the findings of fact, the referee finds that Noll and Bordner had arranged between them, prior to the sale at which Noll purchased, that the deed was to be made direct to Bordner, in consideration of his assisting Noll to raise the money to pay for the same; that the deed was so made to Bordner, and that Bordner was to reconvey to Noll as soon as Noll had paid him all the moneys advanced and secured by Bordner.

The referee also finds that Bordner made a demand upon Noll for the money, prior to the time the mortgage was given, and gave him full opportunity to get it elsewhere if he could, although no particular time when he was to get it was fixed.

The referee also further finds that Bordner represented himself to the agent of the plaintiff as the owner of the land, and that Bordner understood that he held the deed simply as security for the money he had advanced to Noll.

The referee finds nothing in the various exceptions to his conclusions of law which cause him in any way to change the same, and therefore directs judgment to be entered in accordance with the judgment rendered in the opinion to which the exceptions are filed.

Judgment having been entered as directed in the referee's first report, the plaintiff took this writ, alleging by several specifications that the referee erred:

1–6. In not sustaining the plaintiff's exceptions. [1 to 6]

*Mr. Jeff. Snyder* (with him *Mr. Geo. F. Baer*), for the plaintiff in error:

1. If Bordner was a mere mortgagee of the lands claimed by Noll, who was the mortgagor? Not the grantors of Bordner's title, for they have been paid in full and assert no further claim on the land. Noll can hardly be considered a mortgagor, for he never held the title, the conveyance having been made directly

Arguments.

from the executors of Michael Houtz to Bordner. Noll never had even the equitable title. The land was purchased in pursuance of an agreement, with the view, as alleged, of placing the title in Bordner until all the money which he had loaned should be repaid. Bordner was undoubtedly the holder of the legal title as trustee for Noll. The deed was a deed of trust in which Noll had the same rights as a mortgagor against a mortgagee: Hewitt v. Huling, 11 Pa. 27.

2. But it is a matter of little consequence what was the exact character of Bordner's interest in the land. He assured the plaintiff that he was the owner of the land. Upon the faith of that representation the plaintiff's money was loaned, and it is plain that he and his privies cannot now set up any different state of facts to the plaintiff's harm. Upon the facts as found by the referee, it would be impossible to conceive of a case which would call more loudly for the application of the doctrine of estoppel than this; and, as between Bordner and Brooke, the mortgagor and mortgagee, Bordner's interest is a real interest, and the mortgage, so far as the parties to it are concerned, is a valid lien upon Bordner's interest in the land: Shultze v. Diehl, 2 P. & W. 277; Miller's App., 84 Pa. 391; Chapman v. Chapman, 59 Pa. 218; Woodward v. Tudor, 81 Pa. 394; Putnam v. Tyler, 117 Pa. 570.

3. When once Noll's interest in the land is established it is clearly none of his business to interfere between Bordner and Brooke. Noll admits that when Brooke's mortgage was placed on record, March 27, 1886, he owed $1,600 principal and one year's interest, which latter he paid a short time after. He is willing to pay his indebtedness to the party entitled to receive it, and we presume he will demand a deed conveying Bordner's title. Now the only thing Noll came in to do was to establish at once his interest. That being ascertained and fixed there is no reason why the case should not proceed against Bordner. If the judgment is entered against Bordner as to his interest in Noll's land, upon execution the sheriff will sell and convey Bordner's interest, and when Noll then pays his indebtedness, the sheriff's vendee upon receiving the money will make the necessary deed to Noll and thus assure to him his title in full accord with the terms of the original contract.

*Mr. Henry C. G. Reber* (with him *Mr. Daniel Ermentrout* and *Mr. C. H. Ruhl*), for the defendant in error :

1. The referee properly construed the deed to Bordner to be a mortgage, because it was delivered and held as a mere security. The fact that Noll continued in possession, controlling, using and improving the property as his own, and paying the taxes thereon, must necessarily have been regarded by the referee as significant, and as notice to the plaintiff of Noll's title. These facts were abundantly sufficient to charge the plaintiff with the duty of inquiry, and to make it the duty of the court to deal with him as though he knew all he would have learned by inquiry : Rowe v. Ream, 105 Pa. 543 ; Hottenstein v. Lerch, 104 Pa. 454 ; Pearson v. Sharp, 115 Pa. 254. The act of June 18, 1881, P. L. 84, relating to defeasances, is inapplicable, because it was not yet enacted when this instrument was executed. Bordner's conveyance was not a deed of trust, but a mortgage, a pledge or security : Lance's App., 112 Pa. 456.

2. The contention of the plaintiff, that Bordner's interest is an estate in the land, cannot be sustained, for a mortgage of lands in Pennsylvania is regarded as a mere security for money, a chattel interest, the debt being considered as the principal and the mortgage as accessory or appurtenant thereto : Craft v. Webster, 4 R. 255 ; Ackla v. Ackla, 6 Pa. 228 ; Moore v. Cornell, 68 Pa. 322 ; Michener v. Cavender, 38 Pa. 338 ; Myers v. White, 1 R. 355 ; Rickert v. Madeira, 1 R. 325 ; Wilson v. Shoenberger, 31 Pa. 295 ; Asay v. Hoover, 5 Pa. 35 ; Witmer's App., 45 Pa. 463 ; Talbot's App., 2 Chest. Co. R. 413. We submit that Brooke's mortgage is not a lien on Noll's land, and that the lien of his judgment on the scire facias and the execution which may be issued theron, must be limited to Bordner's own tract of land.

OPINION, MR. JUSTICE MITCHELL :

The learned referee accurately perceived and stated the general effect of the transaction, but, failing to give due weight to the distinctions between legal and merely equitable rights, he denied plaintiff the remedy to which he was entitled.

Bordner bought land, received a deed, and thus became the legal owner. While thus the legal owner, he made a mortgage

to Brooke, duly executed and recorded. Brooke thus acquired a lien on the land, perfectly good against Bordner and every one claiming under him, and having brought suit on his mortgage, what is there to stand in the way of his recovery? So far as Bordner and his assignee are concerned, nothing. Bordner mortgaged all the title he had to Brooke, and when he subsequently made an assignment, the assignee took nothing but an equity of redemption, because his assignor had nothing else to give. As between Brooke and the assignee, the former had an equity at least equal in force and prior in time, and had his legal right in addition. So far, therefore, as this is a scire facias against Bordner and his assignee, it is the ordinary case of mortgagor and mortgagee, and there is nothing to prevent judgment and execution in the ordinary course of law.

But the scire facias being with notice to the terre tenant Noll, the latter is entitled to come in and make defence pro interesse suo. It is found by the referee, and uncontested, that Noll made an agreement with Bordner, at the time of the latter's purchase, verbal then, but subsequently reduced to writing, by which Bordner was to take the title, subject to the right of Noll to have it conveyed to him, upon the payment of a certain sum of money. A portion of this sum has been paid, and it is agreed that $1,600 remain due. Bordner's title, therefore, was subject to a trust in favor of Noll, which made it, in effect, a mortgage, and it would be so treated in equity. The referee, therefore, held that it was only a mortgage, and could not be again mortgaged by Bordner to Brooke. But this is a purely technical objection, and can apply only to a technical mortgage, and Bordner's title was not technically a mortgage. In law, it was the full title to the land, and a mortgage of it was none the less a mortgage, because the title, in equity, and upon certain terms, was defeasible by Noll.

If Noll had not happened to live on the land, Brooke would have taken a good mortgage against him, as well as against the rest of the world, but as his possession was enough to put Brooke upon inquiry, the latter took subject to Noll's equity, whatever that was. If the suit had gone on in the ordinary way to judgment and execution, which, as we have seen, could not have been prevented by Bordner or his assignee, and Brooke had purchased the land at the sale, Noll could then have come

in by bill, to establish his equity and compel conveyance of the legal title on payment of the amount due. Having been brought in on the scire facias, his rights against the plaintiff are neither greater nor less. His land is subject to the mortgage, with a right to be released on the payment, not of the amount of the mortgage, but of the balance due on the original agreement with Bordner. That balance having been due to Bordner as holder of the legal title, is now due to Brooke as mortgagee of that title; and as Noll had no equity to compel Bordner to convey the legal title without payment of the balance due, so now he has no equity to compel a release of his land from the mortgage, without payment of the said balance to Brooke. Upon such payment, however, Noll will be entitled not only to a release of the mortgage by Brooke, but also to a conveyance of the title by Bordner, or whoever may then stand in his place.

> Judgment reversed, and record remitted, with directions to enter judgment for plaintiff Brooke against defendant Bordner, and terre tenant Noll, for the amount of the mortgage, with interest and costs, said judgment to be released and discharged as to Noll, terre tenant, on payment of the sum of $1,600, with arrears of interest, and costs.