Kinch et ux., Appellants, *v.* Fluke et al.

Argued March 29, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and LINN, JJ.

*R. A. Henderson,* for appellants.—Vendees' ownership of the land was made more notorious by their possession of it than if they had recorded the agreement of purchase: Berryhill v. Kichner, 96 Pa. 489; Stonecipher v. Keane, 268 Pa. 540; Rowe v. Ream, 105 Pa. 543.

The lienor is required to give notice to the vendees in order to impose the duty upon them of withholding the deferred installments of the purchase price from the vendors: Horning's App., 90 Pa. 388; Maul v. Rider, 59 Pa. 171; Bank v. Carr, 15 Pa. Superior Ct. 346; Maul v. Rider, 59 Pa. 167; Davis v. Monroe, 187 Pa. 212.

*Ellis L. Orvis,* with him *H. J. Scheeline,* of *Scheeline & Smith,* for appellee.—It has been frequently held that just as the owner of a legal title could mortgage, sell or assign his equitable estate, so equally a vendor could convey, assign or mortgage his legal title: Brooke v. Bordner, 125 Pa. 470.

Mortgages, without discrimination, become liens on specific property, and are notice, not only to all parties in interest, but to the entire world, on the day that the mortgage instruments are recorded: Brook's App., 64 Pa. 127.

OPINION BY MR. JUSTICE KEPHART, May 1, 1933:

Kinch and wife, appellants, on September 24, 1923, purchased by written agreement (not recorded) from Robert E. Fluke and James H. O'Rorke, trading as The Home Realty Company, a dwelling house in Altoona for $6,000. Of this sum $2,261.14 was paid in cash on the execution of the agreement. The balance $3,738.86 was

to be paid in monthly installments of $35 each, with interest on deferred payments. The legal title was in Fluke. On October 8th of the same year, the purchasers entered into open, exclusive and notorious possession of the premises and occupied it as a dwelling house, residing in it from that time until the present time. Monthly payments were being duly made when in 1925, Fluke, the vendor, gave a mortgage for $3,000 to the Seaboard Company. It was recorded in January of that year. At the same time, he gave another mortgage for $700 to the Finance Company. It was recorded the same day as the Seaboard mortgage. In December, 1926, Kinch and wife borrowed $4,000 from John C. Peightal and gave a mortgage on the premises as security. With this money, the balance of the purchase money due the vendor was paid. A deed was executed at the same time from Fluke to the appellants. When the purchase price was paid, Kinch and his wife knew nothing of the execution of the two mortgages; neither the Seaboard Company nor the Finance Company made any inquiry as to the condition of Fluke's title by reason of the occupancy of the premises by the appellants.

When appellants desired to borrow the $4,000 above mentioned, they visited an attorney and inquired from him whether he could place the loan. The attorney took up the matter with Peightal. He agreed to make the loan provided he, Peightal, was allowed a commission of $200 for making the loan. When the attorney searched the record for mortgages and other liens, he discovered the two mortgages, but decided the mortgages were not against the land in question, and did not report them to the mortgagees. The loan was made and the commission paid to the attorney, who retained $50 from it and remitted $150 to Peightal.

Appellants, some years later, on discovering the two mortgages as possible liens against their property, brought a bill to remove the cloud on their title imposed by the two mortgages and to obtain a decree of satisfac-

tion as they related to this land. The court below found that the recording of the mortgages to the Seaboard and Finance Companies between the time of the execution of the agreement and the execution of the deed, was constructive notice of these liens to Kinch and his wife, the appellants. In addition, the court found that the latter had actual notice of these mortgages through the knowledge their attorney had after searching the record. The court below found that the attorney represented the appellants and the mortgagee. The bill was dismissed and this appeal followed.

A vendee who purchases land, by entering into open, notorious and continued possession of it, gives notice not only of his interest in the land, but that of his vendor. This is true notwithstanding the fact that the agreement of purchase was not entered of record. Such possession is evidence of title, and, in a certain sense, is a substitute for recording the agreement of purchase, and is sufficient to put a subsequent purchaser or mortgagee on inquiry: Hottenstein v. Lerch, 104 Pa. 454; Lord's App., 105 Pa. 451; Rowe v. Ream, 105 Pa. 543; White v. Patterson, 139 Pa. 429. A prospective purchaser is required to make inquiry of those in possession, and failing to do so, is affected with constructive notice of all that such inquiry would have disclosed: Stonecipher v. Keane, 268 Pa. 540; Lazarus v. Lehigh & W.-B. Coal Co., 246 Pa. 178; Ohio R. Junc. R. R. Co. v. Pa. Co., 222 Pa. 573; Jamison v. Dimock, 95 Pa. 52. The notice of possession which the law imposes on a subsequent vendee or mortgagee without regard to whether he has actual knowledge or not, is of such character that it cannot be controverted. The means of knowledge which possession affords is regarded as the legal equivalent of actual notice: Rowe v. Ream, supra, at 546. It is conceded that neither of the mortgagees, the Seaboard or Finance Company, made any inquiry of appellants, who were in possession, as to the nature of their title. The

mortgagees, therefore, took subject to the interests under the agreement of sale.

What then was the effect of the recording of mortgages on future payments by the vendees, appellants in this case? It has been stated that where a vendor sells lands by articles of agreement, a subsequent judgment against the vendor binds the legal estate in the vendor but only to the value of the unpaid purchase money: Brooke v. Bordner, 125 Pa. 470; Catlin v. Robinson, 2 Watts 373; Fasholt v. Reed, 16 S. & R. 265. As it has been otherwise stated: a judgment against the vendor of land retaining legal title is not so much a lien on the legal title as it is on the unpaid purchase money. These statements of the law are broader than the cases there mentioned will sustain for they omit any mention of notice to the vendee. The question here involved is whether the recording of a mortgage against the vendor's interest is constructive notice of the lien of that mortgage *to vendees in possession* under an agreement of sale.

The purpose of recording mortgages or of entering judgment is to give notice of its existence to those who subsequently acquire an interest in or lien upon the property. It is sometimes said "that the record of a deed [or mortgage] is constructive notice to all the world." That, it is evident, is too broad and unqualified an enunciation of the doctrine. Recording is constructive notice only to those who are bound to search for it: *subsequent* purchasers and mortgagees, and, perhaps, all others who deal with or on the credit of the title, in the line of which the recorded deed [or mortgage] belongs: Maul v. Rider, 59 Pa. 167, 171; Bank v. Carr, 15 Pa. Superior Ct. 346, 349. The assignment of a mortgage by an instrument duly executed, or the assignment of such mortgage on the margin of the mortgage record is not such legal notice to the mortgagor as will preclude him from setting up payments made by him to the mortgagee before he has actual notice of the assignment: Foster v. Carson, 159 Pa. 477; O'Maley v. Pugliese, 272 Pa. 356, 359;

Brindle v. McIlvaine, 9 S. & R. 74, 75; Bury v. Hartman, 4 S. & R. 175; Lee v. Sallada, 7 Pa. Superior Ct. 98. In order to complete the assignee's right with respect to such an assignment, the law requires actual notice be given to the mortgagor of the assignment. The recording act imposes no duty on the mortgagor to search the record for the purpose of ascertaining whether the mortgagee has assigned the mortgage. To do so would impose too great a burden on the mortgagor. Actual notice must be given to the mortgagor of the assignment.

It has also been held that the docketing of a judgment is not notice of the lien to a purchaser in possession, since, after he has made his contract for the purchase and entered into possession, he is not bound to keep the run of the dockets, and payments subsequently made by him to the vendor pursuant to the contract without actual notice of the judgment, are valid as against such liens. See Black on Judgments, section 438, and Freeman on Judgments, 4th edition, section 364, and the numerous authorities from other states there cited.

We held in Riddle v. Berg Co., 3 Sad. 566, 7 Atl. 232, where land was held pursuant to an article of agreement, and before the date of final payment a promissory note was given for the final payment, that it was not the duty of the purchaser, who has given such note in payment of the balance due on the purchase price, to watch the record and, when a judgment is entered, inform the judgment plaintiff of the existence of the note and the possibility of its being negotiated.

If the recording of an assignment of a mortgage, or the docketing of a judgment, is not effective as constructive notice to the vendee of land when payments are to be made by the vendee to the mortgagor or judgment debtor, but actual notice is essential, how then can the rule of law be that the mere recording of a mortgage is effective as constructive notice to the vendee who purchased and was in actual possession of the land before the existence of such mortgage. The mortgagee has ample opportu-

·nity to ascertain the state of the possessor's title, the amount of purchase money due the mortgagor; and is given ample opportunity to effectuate his lien by notifying the vendee under articles of his mortgage or judgment. We can readily see where land is sold by articles of agreement and the purchaser does not go into possession, that his subsequent payment of purchase money to the vendor must be at his peril if judgments or mortgages have been entered in the interim. Such lien holders have no means of information (apart from actual notice) that the mortgagor or judgment debtor has parted with his title. The rule must be otherwise as to the sale of land under articles of agreement where possession is taken thereunder and held openly, continuously and notoriously. The opportunity is then afforded to the mortgagee of completing his lien by actual notice to the vendee in possession. We, therefore, conclude that the recording of a mortgage or docketing of a judgment is not constructive notice of a lien on land to a vendee then in possession under an agreement of sale. The mortgage operates as an assignment of the balance of the purchase money due but actual notice is required to make it effective. In other words, the lien of a mortgage or judgment, whether or not recorded or docketed, on the unpaid purchase money due from a vendee of land in possession under an agreement of sale, is not effective so as to require payment of the unpaid purchase money to the mortgagee or holder of the judgment unless actual notice of such mortgage or judgment has been given to the vendee in possession.

If the rule were otherwise in the instant case, before each monthly payment was made it would be necessary for the purchasers to inquire from the mortgage record whether the vendor had assigned the balance of the purchase money due. This is an unwarranted burden.

The lower court based its decision on several cases; none of them go to the extent its final conclusion would indicate: Kinports v. Boynton, 120 Pa. 306, did not

involve the question of notice to vendee, but rather of whether the vendor had such an interest as was subject to the lien of a judgment obtained after he had mortgaged his interest and assigned his claim to the purchase money, to a third person by unrecorded instruments. In Brooks v. Bordner, supra, the court reached the conclusion which we do in the instant case as to the effect of vendee's possession. The effect of recording the mortgage as notice to the vendee was not considered. Moreover, the result of the case was to substitute a different person to receive the purchase money due. In McMullen v. Wenner, 16 S. & R. 17, there was nothing to show vendee's possession when the judgment was entered. No notice of vendee's interest was given and nothing had been paid when the agreement for the purchase of the land was made. When the deed was delivered and the bonds were given in payment for the land, the judgment of record then indicated the state of vendor's title; vendees were affected with notice of the title, and were under a duty to protect themselves against it; but in the instant case, the possession of the vendees was the equivalent of recording for the purposes of notice so that they had no reason to search the record when they made their payments, provided it had been clear at the time they entered into possession under their agreement to purchase. The other cases (Stewart v. Coder, 11 Pa. 90; Catlin v. Robinson, supra; Fasholt v. Reed, supra; McCleery v. Stoup, 32 Pa. Superior Ct. 42), do not conflict with the conclusions herein.

The next question involved is whether appellants received actual notice of the two mortgages against this land given by Fluke, one of appellees, by reason of the search made by the attorney. A careful analysis of this record convinces us that the attorney did not act for both parties; that his employment was by the mortgagee, Peightal, and not by appellants. However, conceding his agency was for both appellants and the mortgagee, it was not for both as to all transactions involved; the at-

torney was agent for appellants to secure the money; he was agent for the mortgagee to obtain proper security for the money by examining title and preparing the proper documents to evidence the security. Any information the attorney acquired while conducting transactions in behalf of one may not be considered as within his knowledge as agent of the other for different purposes. In Byrne v. Dennis, 303 Pa. 72, 77, the court said: "A principal is not affected with notice, actual or constructive, where the acts complained of consist of independent and unrelated acts outside the usual scope of the agency." In Hertzler v. Nissly, 295 Pa. 62, it is stated at page 65: "It is true that the principal is bound by the knowledge acquired by the agent in the course of employment......but not when secured in the course of other independent transactions: Fourth Bleucher B. Assn. v. Halpern, 270 Pa. 169; Gilkeson v. Thompson, 210 Pa. 355; B. & P. Ry. Co. v. American Bangor Slate Co., 203 Pa. 6."

Furthermore, assuming that he was attorney for appellants, they would be affected only with the notice of the record which was fairly within the knowledge of the attorney. Upon examination of the record, we find that the attorney had no knowledge or notice of the existence of these two mortgages as liens on this particular land. He was asked the question and it was not contradicted: "Q. You say now that you didn't know of the existence of any lien or encumbrances or mortgages on this Kinch property when you made the examination? A. Yes. That is what I stated to you. Q. And you have now just put on the record your statement that you didn't have any knowledge of the mortgage of the Seaboard Insurance Company of $3,000 and the mortgage of the Finance Company of America of $700? A. No. I will explain that this way. I had knowledge of these two mortgages but did not have knowledge of the fact that they were liens of this property. Q. Then you were mistaken in the liens on this property? A. I was mis-

taken in the two descriptions in these two mortgages. That they were not identical with the description in the deed. Q. Did you make any effort to determine whether the two descriptions embraced in these two mortgages were the same as the property which was conveyed by Fluke to Kinch? A. I made my examination as I always do. I got the list of the mortgages against the person in the title. And then the description in the mortgage and if I believe they are not liens against the property I check them off. That is what I did here. Q. How long after this loan of Peightal's was closed did you find that these two mortgages covered the Kinch property? A. Not until Mr. Robert Hare came up to the office and informed me. Q. That was the first information you had? A. Yes. That was the first I had. Q. That was how long after the date of the Peightal mortgage? A. I will go the other way. I think that was possibly a year ago, as near as I can recollect. Q. Approximately four years after the date of the Peightal mortgage? A. That was about the time. The Peightal mortgage was in 1926."

We do not have before us a copy of the mortgages, and, as a result, are unable to ascertain from an inspection thereof whether Culp's (the attorney's) statement was justified, but the testimony clearly demonstrates that a title searcher would be misled by the description in the mortgage when attempting to trace title from the description in the deed. A principal is not to be affected with knowledge of his agent unless his agent has, or could have had within his duty, the knowledge with which it is sought to affect him: if the agent did not know, then, of course, his principal could not know.

We conclude that the court below was in error in dismissing the bill.

The decree of the court below must be reversed, the bill reinstated, with direction to enter a decree in accordance with the prayer of the bill, costs to be paid by appellee.