**In re Shirley GRAVES, Debtor.**

**Bankruptcy No. 92–12437S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 25, 1992.

F. Lee Jones, Philadelphia, Pa., for debtor.

David B. Comroe, Lipman, Freiberg, Comroe & Hing, Philadelphia, Pa., for Fleet Consumer Discount Co.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

## A. INTRODUCTION

The resolution of the instant motion of Fleet Consumer Discount Co. ("Fleet") to permit it to proceed with a state-court action to evict SHIRLEY GRAVES ("the Debtor") from her home at 6133 Nassau Road, Philadelphia, Pennsylvania 19151 ("the Home"), requires this court to determine whether applicable state law was complied with and whether the Debtor received due process when she failed to receive personal notice of the sheriff's sale of the Home to Fleet. We hold that the Debtor, a part owner of the Home upon the death of her father-co-owner, was entitled to personal notice of the sale. Alternatively, we find that the Debtor's extended continuous possession of the Home provided constructive notice to the execution creditor, the first mortgagee on the Home, Liberty Bank ("Liberty"), of the Debtor's interest in the Home, which, if investigated, would have revealed her part ownership interest. As a third alternative, we also find that Fleet's actual knowledge of the Debtor's interest in the Home prior to the sale precluded its buying the Home as a bona fide purchaser at the sale. We therefore conclude that the absence of personal notice to the Debtor violated her state-law and due process rights on three alternative grounds, precluding Fleet from obtaining the relief which it seeks.

## B. PROCEDURAL AND FACTUAL HISTORY

The Debtor filed the underlying individual Chapter 13 bankruptcy case on April 22, 1992. A meeting of creditors was duly conducted in this case on June 8, 1992, and a confirmation hearing is scheduled on September 15, 1992.

Fleet filed the instant motion for relief on May 12, 1992, relying solely upon its allegation that the Debtor's claim of part-title to, and right to retain possession of, the Home had been cut off by a sheriff's sale of October 7, 1991, at which it was the purchaser. *See First Nat'l Fidelity Corp. v. Perry*, 945 F.2d 61, 61–62 (3d Cir.1991);

*In re Roach,* 824 F.2d 1370, 1377–79 (3d Cir.1987); and *In re Brown,* 75 B.R. 1009, 1012 (Bankr.E.D.Pa.1987) (foreclosure sale cuts off Pennsylvania debtor's right to claim title to a mortgaged premises and cure a mortgage delinquency).

A hearing on June 9, 1992, was conducted on the motion. Testifying were Heather Thompson, a Fleet Vice–President who presented and interpreted Fleet's file in connection with the Home, and the Debtor.

The testimony established that the Home was titled, when purchased, on October 18, 1982, in the names of Thomas Bacon, the Debtor's father ("Thomas"), and Duane Bacon, the Debtor's nephew ("Duane"). Thomas died intestate on January 7, 1986, survived by his spouse, Mamie Bacon ("Mamie"), and three children, the Debtor, her disabled brother Andrew, and another brother Norman, apparently Duane's father. Mamie died on September 5, 1990. The Debtor and Andrew, presently the sole residents of the Home, have continuously lived there since its purchase in 1982. Although the Debtor testified that she had commenced proceedings to administer her father's estate, the status of these proceedings was unclear, and the recorded title of the Premises has remained at all time in the names of Thomas and Duane.

In September, 1988, Duane made a loan from Fleet and, unknown to the Debtor, executed a mortgage on his interest in the Home as security. The payments on this loan are delinquent and the balance owed is approximately $12,000.

In November, 1990, Liberty commenced a foreclosure action against Thomas and Duane in state court. Duane had vacated the Home in September, 1990. Service was effected on both Thomas (allegedly) and Duane by certified mail and posting of the Home, which were permitted by the state court as means of alternative service and are verified as accomplished by Affidavits of record. A default judgment was ultimately entered in this action and a sheriff's sale in execution on that judgment was ultimately conducted on October 7, 1991.

The records of Liberty's foreclosure suit against the Bacons indicate that notice of the sale to the owners of the Home was provided by first-class mail addressed to Thomas and Duane, and by the posting of the Home.

Thompson described records of contacts of Fleet with the Debtor and Duane in June, 1991, which made Fleet aware that Thomas was deceased and that the Debtor claimed to be one of his heirs. Thompson interpreted the records as indicating that Fleet had provided actual notice to the Debtor of the pending sheriff's sale of the Home during those contacts. The Debtor, meanwhile, denied any knowledge of the impending sheriff's sale prior to its occurrence, or any contacts from Fleet prior to October 8, 1991, the day after the Home was sold to Fleet for a bid of $41,000 cash, plus $1,000 costs plus, in effect, the amount of its claim of $12,000. The Debtor claimed that no posting of the Home occurred. She also stated that the contact from a Fleet representative on October 8, 1991, had been rude and arrogant.

Fleet commenced a state-court ejectment action against the Debtor and her brother Andrew on November 8, 1991. A default judgment was entered in this action on January 15, 1992.

The Debtor ultimately hired counsel to file petitions on her behalf to contest the validity of the sheriff's sale and underlying judgment in Liberty's foreclosure action, and the default judgment against her and her brother in the ejectment action. An Order was entered by the state court denying a stay of execution in the ejectment action on April 14, 1992. On May 18, 1992, the state court entered an Order denying all relief on the Debtor's motions in the foreclosure action. However, since the Debtor had filed her bankruptcy case on April 22, 1992, prior to the entry of the Order in the foreclosure action, that Order, as to her, was violative of the automatic stay and, accordingly, void. *See Borman v. Raymark Industries, Inc.,* 946 F.2d 1031 (3d Cir.1991); and *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448–49 (3d Cir.1982) (automatic stay applies to all actions originally brought against the debtor, irrespec-

tive of the status of the action and even as to proceedings in the action initiated by the debtor).

At the close of the hearing on its motion on June 9, 1992, Fleet attempted to move into evidence uncertified copies of the Affidavits of service of the Complaint and notice of the sheriff's sale and certain other documents from the state-court records. Objections of the Debtor's counsel were sustained under Federal Rule of Evidence ("F.R.E.") 902(4). Fleet's counsel then requested an opportunity to keep the record open to obtain and admit certified copies of these documents. In addition, the Debtor's counsel requested an opportunity to submit a Brief in support of her client's position. While we refused to keep the record open on that date, we entered an Order allowing Fleet to file a motion to reopen the record to add certified copies of the documents in issue on or before June 10, 1992; allowing both parties until June 17, 1992, to file any Briefs in support of their respective positions; and scheduling a hearing on any motion to reopen the record filed by Fleet on June 18, 1992.

Fleet did timely file a motion to admit certified copies of certain state-court pleadings into the record, which we granted on June 18, 1992. Only Fleet submitted a Brief. However, since our independent research indicated merit in the Debtor's position, we expended most of the hearing of June 18, 1992, in an extended dialogue with Fleet's counsel, in which we expressed most of the conclusions reached herein in response to counsel's arguments.

## C. DISCUSSION

We credit the undisputed testimony of the Debtor that she is an heir of Thomas. As such, she was, at all times since his death in 1986, a part owner of the Home. *See* 20 Pa.C.S. §§ 2101, 2103(1); *Blank v. Clark,* 79 F.Supp. 373, 376–77 (E.D.Pa. 1948); and *Quality Lumber & Millwork Co. v. Andrus,* 414 Pa. 411, 415, 200 A.2d 754, 757 (1964).

In response to the holding of the Pennsylvania Supreme Court, in *Luskey v. Steffron, Inc.,* 461 Pa. 305, 336 A.2d 298 (1975),

*cert. denied,* 430 U.S. 968, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977), that due process of law requires personal notice of a sheriff's sale to the owner of property sold, certain Pennsylvania Rules of Civil Procedure ("Pa. R.Civ.P.") have been enacted. *See generally* 9 GOODRICH AMRAM 2d 312–13 (1977), and June, 1992, Supp. thereto, at 42–56. Pa.R.Civ.P. 3129.1(a), (b) provide as follows:

(a) No sale of real property upon a writ of execution shall be held until the plaintiff has filed with the sheriff the affidavit required by subdivision (b) and the notice required by rule 3129.2 has been ·served.

(b) *The affidavit shall set forth to the best of the affiant's knowledge or information and belief* as of the date of the praecipe for the writ of execution was filed the name and address or whereabouts of

(1) *the owner or reputed owner of the real property* and of the defendant in the judgment; and

(2) every other person who has any record lien on that property; and

(3) *every other person who has any record interest in that property which may be affected by the sale;* and

(4) *every other person who has any interest in that property not of record which may be affected by the sale and of which the plaintiff has knowledge.* If the name and address or whereabouts of the persons in subparagraphs (1) through (4) cannot be reasonably ascertained, the affidavit shall so state (emphasis added).

Pa.R.Civ.P. 3129.2(c) provides as follows:

(c) The written notice shall be prepared by the plaintiff, shall contain the same information as the handbills or may consist of the handbill and shall be served at least thirty days before the sale on all persons whose names and addresses are set forth in the affidavit required by Rule 3129.1.

(1) *Service of the notice shall be made*

(i) *upon a defendant in the judgment who has not entered an appearance and upon the owner of the property*

(A) by the sheriff in the manner prescribed by Rule 402(a)[1] for the service of original process upon a defendant; or

(B) by the plaintiff mailing a copy in the manner prescribed by rule 403 to the address set forth in the affidavit; or

(C) if service cannot be made as provided in subparagraph (A) or (B), the notice shall be served pursuant to special order of court as prescribed by Rule 430,[2] except that if original process was served pursuant to a special order of court under Rule 430 upon the defendant in the judgment, the notice may be served upon the defendant in the manner provided by the order for service of original process without further application to the court; and · (ii) upon the defendant in the judgment who has entered an appearance, by the plaintiff in the manner provided by Rule 440;[3] and

(iii) upon each other person named in the affidavit by the plaintiff by ordinary mail at the address set forth in the affidavit with the return address of the plaintiff appearing thereon. The plaintiff shall obtain from the U.S. Postal Service a Form 3817 Certificate of Mailing. Service shall be complete upon · mailing. If the mail is returned the validity of the service shall not be impaired and the sale shall proceed at the time fixed in the notice (emphasis added).

■ Pa.R.Civ.P. 3129.2(c)(1) thus requires, without qualification, that notice of any sheriff's sale must be served upon any defendant who has not entered an appearance in the underlying action "and upon the owner of the property" proposed to be sold. We presume that every owner of any interest in a property is considered as *"the* owner" of a property. *Cf. Beckett v. Laux*, 395 Pa.Super. 563, 573 n. 5, 577 A.2d 1341, 1346 n. 5 (1990); and *Bank of Penn-*

*sylvania v. G/N Enterprises*, 316 Pa.Super. 367, 372–73, 463 A.2d 4, 7 (1983) (under predecessor to Rule 3129.2, written notice must be given to any "owner or reputed owner" of real estate to be sold). The Debtor was admittedly not served, in her own name, with any notice of the sheriff's sale. Therefore, by a simple and strict reading of the pertinent state law, Pa. R.Civ.P. 3129.1(a) was not followed and the sheriff's sale must be deemed to be invalid as to the Debtor because the requisite notice required by the said Rule was not provided to her.

■ However, there are other, less technical grounds for reaching the same result. Liberty was required, pursuant to Pa. R.Civ.P. 3129.1(b)(1), (b)(3), and (b)(4), to set forth the names and addresses of not only the "owner or reputed owner" of the Home, but of every person other than the owner who had a "record interest" which might be affected by the sale and who had an interest not of record which was known to the plaintiff. Liberty did not set forth the name and address of the Debtor, who was a part owner of the Home, on its Affidavit.

■ Fleet argued that there was no evidence that Liberty had knowledge of the Debtor's ownership interest. It is not clear that Liberty's knowledge is relevant as to the exclusion of the Debtor under Rule 3129.1(b)(1), as the requirement that the "owner or reputed owner" be served is not qualified by the phrase "of which the Plaintiff has knowledge," as in Rule 3129.1(b)(4). However, the initial paragraph of Rule 3129.1(b) speaks of an Affidavit "to the best of affiant's knowledge or belief." Therefore, arguably, Liberty's knowledge of the Debtor's interest was a prerequisite to its duty to include the Debtor's name and address on the rule 3129.1 Affidavit.

However, in Pennsylvania, clear and open possession of real property general-

---

**1.** By handing a copy to the defendant or a person in charge of the defendant's residence or usual place of business.

**2.** Pursuant to a special order of court, by publication.

**3.** By handing or mailing a copy to a party or that party's attorney of record.

ly constitutes constructive notice to subsequent purchasers of the rights of the party in possession. Such possession, even in the absence of recording, obliges any prospective subsequent purchaser to inquire into the possessor's claimed interests, equitable or legal, in that property. *See, e.g., Kinch v. Fluke,* 311 Pa. 405, 166 A. 905 (1933); *Long John Silver's, Inc. v. Fiore,* 255 Pa.Super. 183, 386 A.2d 569 (1978).

*McCannon v. Marston,* 679 F.2d 13, 16 (3d Cir.1982). Similarly, we believe that Liberty, as a judgment creditor, received constructive notice of the interest of the Debtor in the Home in light of her indisputably clear and open possession of the Home since 1982. Had Liberty inquired of the Debtor, it would have learned that her status fell within all of the categories of Rule 3129.1(b)(1), (b)(3), and (b)(4). Hence, we conclude that Liberty's constructive notice of the Debtor's interest in the Home rendered Liberty's failure to include her on the Affidavit violative of Rule 3129.1(b). This violation of Rule 3129.1(b) resulted in the failure of the Debtor to obtain personal service of notice of the sale, as required by Rule 3129.2(c). It also violated the right of the Debtor to due process of law prior to the deprivation of her property interest in the Home. *See Luskey, supra;* and *First Federal Savings & Loan Ass'n v. Porter,* 408 Pa. 236, 244, 183 A.2d 318, 324 (1962).

■ Finally, even if we excused Liberty from a duty to include the Debtor on its Rule 3129.1(b) Affidavit, we find that Fleet was not a bona fide purchaser at the sale and that the sale to it may alternatively be invalidated on this basis. As the testimony of Thompson and Fleet's own records established, Fleet was aware of the Debtor's claim of partial ownership of the Home. Furthermore, no reason to doubt the validity of the Debtor's claim has been shown. The Debtor disputes Fleet's contention that it provided her actual notice of the sale prior to its occurrence, contending that she was first informed of the sale by Fleet in a rude encounter on the day after the sale. Having observed the Debtor, we find her credibility outweighs the hearsay statements contained in Fleet's records to the contrary. Even though these hearsay statements are admissible into evidence, F.R.E. 803(6), the lack of testimony from the party who allegedly actually contacted the Debtor adversely affects the weight of this evidence.

While Fleet's communication of its knowledge of the jeopardy of the Debtor's interest in the Home via the sale to the Debtor is disputed, Fleet's knowledge of the Debtor's interest in the Home is not contested. The issue presented is whether Fleet could properly refrain from notifying Liberty of the Debtor's known interest in the Home, such that the Debtor would be less likely to receive personal service of such notice, and then take advantage of that knowledge by buying the Home at the sale, unencumbered by the Debtor's likely lack of receipt of personal service and notice of that sale. We find that Fleet could not do so and retain the status of a bona fide purchaser.

■ Fleet argued that its knowledge of the Debtor's interest in the Home cannot be imputed to Liberty, which alone had the duty to submit the Rule 3129.1 Affidavit. While such an imputation would indeed be inappropriate, we believe that, as a prospective and ultimately successful purchaser of the Home, Fleet had a duty to share its knowledge of the Debtor's interest in the Home with Liberty. Furthermore, in light of its knowledge of the Debtor's interest, we believe that Fleet, as a purchaser of the sale, was charged with the duty of examining the court records to see whether personal service of notice of the sale was provided to the Debtor. Fleet could readily ascertain that the Debtor was not a defendant in the foreclosure action and hence there was reason to think that no personal notice was provided to the Debtor. Had it examined these records, Fleet would have easily ascertained that no personal notice to the Debtor had in fact been provided. Since it knew that the Debtor was entitled to personally-served notice and it knew or should have known that she received no such notice, Fleet entered the bidding at the sale with knowledge of the defects in

notice to an owner of the Home whose interest it was seeking to extinguish.

As the Supreme Court of Pennsylvania held in *Sidle v. Kaufman*, 345 Pa. 549, 557, 29 A.2d 77, 82 (1942),

[i]it is well settled that purchasers and mortgagees of real estate are affected not only by matters of which they had actual knowledge and by what appeared in the office of the recorder of deeds and in the various courts of record whose territorial jurisdiction embraced the land in dispute, but as well "by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the title:" *Salvation Army Inc. Tr. v. Lawson*, 293 Pa. 459, 463 [143 A. 113 (1928) ]. *See also Kinch v. Fluke*, 311 Pa. 405, 408 [166 A. 905 (1933) ]; *Driebe v. Fort Penn Realty Co.*, [331 Pa. 314,] ... 318 [200 A. 62 (1938) ]; *Koubek v. Tenos*, 343 Pa. 409, 412 [22 A.2d 740 (1941) ].

*See also Dougan v. Bloucher*, 24 Pa. 28 (1854); and *Long John Silver's, Inc. v. Fiore*, 255 Pa.Super. 183, 190–91, 386 A.2d 569, 573 (1978). Fleet knew or could have readily learned the facts of the defects in notice to the Debtor of the sale. It was therefore not a bona fide purchaser at the sale and accordingly cannot take valid title, as against the Debtor, as a result. *Cf. In re Smith*, 866 F.2d 576, 584 (3d Cir.1989) (failure of lender to accord borrower fair treatment in scheduling a sale of her real estate under state law constitutes an unfair and deceptive business practice).

Fleet also argued that this court was bound to accept, as conclusive, the apparently-valid judgment and execution sale thereon effected by the Pennsylvania court system, citing, *e.g.*, this court's own decision in *In re Garafano*, 99 B.R. 624, 629–34 (Bankr.E.D.Pa.1989), in support of that principle. We reiterate that we need not credit the orders entered denying the Debtor relief from the foreclosure judgment and execution, because those orders were invalidly entered in violation of the automatic stay and are void. *See* cases cited at pages 118–19 *supra*. The order

denying the Debtor a stay in the ejectment action was purely interlocutory and, as such, has no *res judicata* effect. *See, e.g., In re 641 Associates, Ltd.*, 22 B.C.D. 1541, 1545, 140 B.R. 619 (Bankr.E.D.Pa.1992); and *Creighan v. Pittsburgh*, 389 Pa. 569, 573–74, 132 A.2d 867, 870 (1957). Therefore, we are not in any way precluded from acting on the basis of that Order, either.

There are, moreover, several other responses to this argument of Fleet. First is the observation that, since the Debtor was not a party to the state-court action, no party representing her interests participated therein, and no matters were actually litigated between the actual parties thereto, it is difficult to accord those proceedings any *res judicata* or collateral estoppel effect as to her. *See, e.g., United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984) (*res judicata* applies only if parties or their privies are involved in a prior suit); and *In re Ross*, 602 F.2d 604, 606 (3d Cir.1979) (collateral estoppel applies only as to issues actually litigated in a prior suit).

Secondly, *Luskey, supra*, establishes that the constitutional due process rights of the Debtor are implicated and would be violated if we allow the sale to be effective as to the Debtor without her receiving personal notice thereof. In circumstances where those proceedings violate constitutional rights, state court judicial proceedings cannot be deemed conclusive by bankruptcy courts. *See In re Beck–Rumbaugh Associates, Inc.*, 103 B.R. 628, 633–34 (Bankr.E.D.Pa.1989), *aff'd*, 114 B.R. 418 (E.D.Pa.1990); and *In re Souders*, 75 B.R. 427, 433–38 (Bankr.E.D.Pa.1987).

Finally, we note the reasoning of former Chief Judge Goldhaber of this court in *In re Sharp*, 24 B.R. 817, 818–19 (Bankr. E.D.Pa.1982), that an issue of whether certain property is property of the debtor's estate must be decided by the bankruptcy court. Under this reasoning, since the status of the Home as property of the Debtor's estate is at issue, this court has the power and duty to independently determine the validity of the instant sheriff's sale.

We therefore conclude that this court is empowered to determine the validity of the sheriff's sale of October 7, 1992, of the Debtor's Home to Fleet. We also conclude that the sale was contrary to applicable State Rules and violative of the Debtor's due process rights. Consequently, we must deny Fleet's motion seeking relief from the automatic stay, which is dependent upon the assumption that the sale of the Home to it was valid.[4]

## D. CONCLUSION

An Order consistent with this Opinion will be entered.

### ORDER

AND NOW, this 25th day of June, 1992, after a hearing of June 9, 1992, and argument on June 18, 1992, on the Motion of Fleet Consumer Discount Co. ("Fleet") for relief from the automatic stay to permit it to proceed with a state-court action to evict the Debtor from her home at 6133 Nassau Road, Philadelphia, Pennsylvania 19151, it is hereby

ORDERED AND DECREED that the Motion is DENIED.

---

**4.** This court nevertheless must express concern as to whether the Debtor, whose only income listed is her welfare benefits of $205 monthly and her brother's disability benefits of $454 monthly, can possibly pay the projected plan payments of $660 monthly to the Trustee under the plan, since the projected monthly payments exceed the Debtor's listed monthly income. The Debtor testified to the recent additional unquantified rents from a boarder, but it seems to us that plan feasibility, although not a difficult threshold to overcome in Chapter 13, *see In re Masterson,* 141 B.R. 84, 86–87 (Bankr.E.D.Pa. 1992), is an issue of significant proportion in this case.

There is also some question in our minds as to whether the contemplated payments, even if made, would be sufficient to liquidate the claim of Liberty, the amount of which is uncertain, let alone, if necessary, also satisfy any secured claims of Fleet and another alleged mortgagee on the Home, Second Consumer Discount Co. Although these are issues for another day, they suggest that the Debtor and the co-owners of the Home would probably be well-advised to attempt to sell it and realize the equity which caused Fleet to invest a substantial bid towards acquiring it while they can.