# Matlack's Appeal.

S owed M $800, secured by mortgage. After the mortgage was recorded, G obtained judgment against S. S made an assignment in trust for his creditors, preferring among others M for a debt due to him of $300, and after the preferences, then in trust for such of his creditors as should release him within sixty days. M executed a release under the assignment of all his demands within the time limited, and afterwards S took the benefit of the Insolvent Act, returning the mortgage as due. *Held*, that the mortgage was released, and G was entitled to be paid first from the money raised on sale of the mortgaged premises by execution.

APPEAL from the decree of the Common Pleas of *Philadelphia* county distributing $643.02, the proceeds of sale of the real estate of James D. Shaw by the sheriff under a writ of *venditioni exponas* to June term 1842.

Out of this fund Thomas Matlack claimed the amount of a

mortgage for $800, recorded March 9th 1841, and James Griffith the amount of a judgment for $1000, obtained March 15th 1841. The following release was executed by Matlack with other creditors, bearing date the 23d April 1841:

" Know all men by these presents, That we, the undersigned creditors of James D. Shaw, of the city of Philadelphia, plasterer, do hereby remise, release and for ever discharge him, the said James D. Shaw, his heirs, executors and administrators, of and from all and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity which, against the said James D. Shaw, we or either of us ever had, now have, or which our heirs, executors, administrators or assigns, or any of them hereafter, can, shall or may have, for or by reason of any cause, matter or thing whatsoever from the beginning of the world to the date of these presents, in consideration of the provisions of his assignment, dated the 23d day of April 1841. In witness whereof, &c."

By the execution of this release, Griffith contended that Matlack gave up the security of his mortgage. The following was the assignment referred to in the release:

" This indenture, made the 23d day of April 1841, between James D. Shaw and Rosa his wife, of the city of Philadelphia, of the first part, and Henry Smith, of the county of Philadelphia, carpenter, of the other part; whereas the said James D. Shaw is indebted unto divers persons in different sums of money, and is desirous of appropriating his estate and effects to and for the payment of the same.

Now this indenture witnesseth, that the said James D. Shaw and Rosa his wife, for and in consideration of the said debts, and also in consideration of the sum of one dollar to them in hand paid by the said Henry Smith, the receipt whereof is hereby acknowledged, hath granted, &c., and by these presents doth grant, &c., unto the said Henry Smith, his heirs, executors, administrators and assigns, all and all manner of estate, real and personal, goods, chattels, book accounts, stock, debts, effects, and all other things of them, the said James and Rosa Shaw, of what kind and nature or equality soever; to have and to hold the same and every part and parcel thereof unto the said Henry Smith, his heirs, executors, administrators and assigns, for ever: in trust nevertheless, and to the only uses, intents and purposes following, that is to say, after paying and discharging the expenses incident to this trust, then,

First. To pay Thomas Matlack a debt due him of $300; then,

Secondly. To pay Henry Smith, &c.

Thirdly. To pay Elizabeth Applegate a debt due her of $200; and after paying and satisfying the said enumerated debts, then

to pay and satisfy to all other creditors whatever of the said James D. Shaw, who shall execute to him a release within 60 days from the date hereof, or on or before the 22d day of June 1841, at 12 o'clock M. of that day, the amount of their respective claims fully, if the estate and effects hereby assigned be sufficient to pay the same in full, and rateably and proportionably if the estate and effects hereby assigned be insufficient to pay the whole thereof.

Lastly, should any surplus remain after payment of the several debts aforesaid, to return the said surplus to the said James D. Shaw, his heirs, executors, administrators and assigns; and the said James D. Shaw and Rosa his wife doth hereby nominate and appoint the said Henry Smith their true and lawful attorney irrevocable to ask, demand, sue for, levy, recover and receive all sum and sums of money to him due and owing, and on receipt thereof in whole or in part to give acquittances, or other sufficient discharges in the law; to make compromises, or other arrangements that he may deem beneficial to this trust, ratifying and confirming hereby, and holding for firm and effectual, all and whatsoever he shall lawfully do therein; he shall have power to make deeds for the real estate to any and all purchasers.

In witness whereof, &c."

To September term 1841 Shaw filed his petition for the benefit of the insolvent laws, and was discharged after making an assignment. In his list of creditors he returned Thomas Matlack mortgage $800.

The court below decreed the fund to Griffith on account of his judgment.

*J. H. Campbell,* for the appellant.
*J. A. Phillips,* contra.

The opinion of the Court was delivered by

Rogers, J.—The general words in a deed or release are restrained by other expressions more limited in the same instrument. Thus, in *Bacon's Ab.,* title " *Release,*" it is laid down that where there are general words all alone in a deed or release, they shall be taken most strongly against the releasor; but where there is a particular recital in a deed, and then general words follow, the general words shall be qualified by the particular recital. This position, though doubted by some, is recognised in *Lyman* v. *Clark,* (9 *Mass.* 237), and in *Payler* v. *Homersham,* (4 *Maule & Selw.* 425). To the same point may be cited *Cole* v. *Knight,* (3 *Mod.* 277), and *Wright* v. *Russel,* (2 *Wils.* 530). The court will vary the construction of an instrument in order to meet the intention of the parties; but this intention must be collected from the instrument itself, and not from matters dehors the writing. We therefore throw out of view the act of the releasee, who, when he

VII.—11

[Matlack's Appeal.]

took the benefit of the Insolvent Act, returned the mortgage as a subsisting debt. And further, because no act of the debtor can change the rights of other creditors, which attached immediately on the execution of the release. The case must be determined on the construction of the release itself. It is admitted that the general words of the release cover the mortgage debt, so that the question is, are there any words in the deed which qualify or restrain these? I regret to say that I see no indication of any such intention, although I am inclined to believe that it is the result of mistake, although unfortunately this does not judicially appear. The principle is conceded that the general words must be taken most strongly against the releasor; but it is insisted that they were intended to apply to the debt due Matlack of $300. But this argument is more plausible than sound, for that debt required no release. It was a debt preferred in the assignment to be paid, in the first place, without any stipulation for a release. The assignment provides for the payment of the sum of $300 to Thomas Matlack; then of a debt to Henry Smith; and thirdly, of a debt to Elizabeth Applegate; and after paying and satisfying the said enumerated debts, then to pay and satisfy all the other creditors of James D. Shaw, the assignor, who shall execute to him a release within sixty days. Upon no fair principle of construction can it be held that the release, which is most *general in* its terms, was intended to apply to a debt which the assignee was not bound to release, when there is another debt which comes within the words of the instrument. But throw that clause out of view, and there remains nothing to qualify or restrain the general words. In truth, unless they apply to the mortgage debt, there is nothing on which the general words in the release can operate, but the rule is that an instrument shall be so construed as to give effect to every part of it. It is idle to speculate as to the motives of the creditor; for he may have many which it is impossible for us to divine. It is enough that the debt comes within the general words of the release, and that there is nothing in the instrument itself to qualify or restrain them.

Judgment affirmed.