## U. S. Bank and Trust Co. Case.

Argued May 2, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. Howard Dilks, Jr.*, with him *Duane, Morris & Heckscher*, for appellants.—The courts have restricted the application of set-off not only to cases where there are cross demands but further to cases where the claims are of the same character: Com. v. Trust Co., 250 Pa. 372; Kurtz v. Bank, 288 Pa. 472; Wagner v. Prettyman, 53 Pa. Superior Ct. 316.

There were no cross demands between the parties: Dietz v. Girard Craftsman's Club of Phila., 9 Pa. D. & C. 805.

This not a proper case for the application of an extraordinary equitable relief.

This case is not one of those in which circuity of action is avoided by allowing a set-off: Faulkner v. McHenry, 235 Pa. 298; May's Est., 218 Pa. 64.

*Vitold E. Balukiewicz* and *Clinton A. Sowers,* for appellee.—The set-off claimed need not be within the language of the Defalcation Act: Morgan v. Bank, 8 S. & R. 73; Lowman's App., 3 W. & S. 349; Com. v. Crow, 294 Pa. 286; Craighead v. Swartz, 219 Pa. 149.

The allowance of a set-off would not destroy the equity of innocent third parties: Green v. Rick, 121 Pa. 130.

OPINION BY MR. JUSTICE SIMPSON, May 22, 1933:

By an arrangement between the Venus Silk Hosiery Company and the Allegheny Title and Trust Company, the former conveyed certain realty to five of its stockholders, who mortgaged it to the Trust Company in the sum of $17,000, then reconveyed it to the Hosiery Company subject to the mortgage, and deposited the proceeds in the latter's checking account with the Trust Company. Subsequently the Trust Company changed its name to that of the U. S. Bank and Trust Company, and hereinafter, for clarity's sake, it will be called the "Bank," whether the transaction being referred to occurred before or after the change of name. Nearly two years later, the bank was taken over by the Secretary of Banking, who proceeded to wind up its affairs. At that time, the Hosiery Company's deposit account with the bank showed a balance of $9,499.72; it paid on account of the mortgage all above that sum, and then filed a petition asking that the deposit should be set off against the balance of the mortgage debt, and the two cancelled. Appellants opposed this, but the court below entered a decree as prayed for, and this appeal followed.

The claim of appellants arose in this way: Some time before the failure of the bank, a trust was created of the foregoing mortgage and certain other mortgages owned by the bank, and proportionate interests in the trust securities were sold to a number of investors, such interests being represented by what are known as Allegheny Title and Trust Company Participating Mortgage Certificates, or U. S. Bank and Trust Company Group

Participating Mortgage Certificates. Appellants and appellees expressly agree that "the legal effect of said certificates was to create a trust wherein the bank was trustee of certain mortgages [including the one in dispute here] and the certificate holders stood in the position of cestuis que trustent......[and that appellants] are entitled to receive as substituted trustees all the mortgages and other property forming said trust for the certificate holders."

It does not appear from the record whether or not this particular mortgage was due at the time the certificates were sold; but it was stated at bar that it was, and this not being denied we will consider the appeal as if this fact was established. Nor does it appear that the Hosiery Company, at any time prior to the date when the bank was taken over by the Secretary of Banking, had ever even claimed that it had or would exercise the right to set-off its variable deposit account against the mortgage indebtedness, either then or at any future time. It is conceded that the certificate holders did not obtain a declaration of no set-off from the Hosiery Company, and that the latter did not know of the trust in favor of the certificate holders until after the bank failed. Though not very definitely stated and not important here, it is reasonably certain that the Hosiery Company learned of the trust before it had taken any steps in the matter of the set-off claimed by it. The question to be decided is: Did the certificate holders, under the facts stated, acquire such an interest in the mortgage as would result in defeating the Hosiery Company's present claim of set-off? We are clear that they did.

The error into which the court below fell was in giving no consideration to the rights of the certificate holders. No one would question the equitable right of the Hosiery Company to have its claim of set-off, if the question were one between it and the bank only: Somerset Colliery Co. v. John, 219 Pa. 380. It is conceded, also, that such right would exist though the case was not strictly within

the purview of the Defalcation Act. This has been frequently decided, but is nowhere better expressed than in the following language from Hibert v. Lang, 165 Pa. 439, 442, which is quoted and approved in Craighead v. Swartz, 219 Pa. 149, 154; Marshall v. Brainerd, 253 Pa. 35, 39-40, and Com. v. Crow, 294 Pa. 286, 291: "In general, in order to support a set-off there must be cross demands between the same parties and in the same rights, *such as would sustain mutual actions against each other,* yet wherever there is the practicability of avoiding circuity of action and needless costs, with safety and convenience to all parties......or where there is a special equity to be subserved, *and no equity of third parties to be injured,* a set-off will be allowed upon equitable principles, though the case does not come within the language of the statute."

When the mortgage was executed and delivered there was no obligation on the bank to keep it, nor did any such obligation thereafter arise. The Hosiery Company had no claim upon it, and had no right to insist that the bank should retain it merely because the Hosiery Company might, at some time in the future, desire to exercise its inchoate right of set-off. To adopt such a rule would destroy free alienability, and might seriously hamper the bank in the performance of its public duties. The right of set-off is an exercisable right, and not a fixed or natural right, conclusively established by the mere fact that each of the parties has a claim against the other. Until the right is exercised, either party may do what he pleases with his property. This is what the bank was doing, when it created the trust and sold the participating certificates, whereby, as both parties agree, the holders thereof became the equitable owners of the mortgage. Not having obtained a declaration of no set-off, they took the mortgage subject to the then existing rights of the Hosiery Company (Kountz v. Kirkpatrick & Lyons, 72 Pa. 376), but it had then no rights which affected the bank's absolute ownership of the mortgage, or its right

then to dispose of it, free of all claims on the part of the Hosiery Company. Had there been a failure of consideration in whole or in part, or had the amount due been reduced in any way, or the time of payment extended, or anything else actually done by which the bank and the Hosiery Company were both then bound, the certificate holders' rights would have been subject thereto, but nothing of this character appears.

. True, the Hosiery Company then had a deposit account with the bank, but this was always subject to its check, and could be wholly withdrawn by it at any time. It was under no obligation to the bank to keep any sum on deposit, and there is no suggestion that the bank had agreed to retain the mortgage, in order that the Hosiery Company might be free, at any time in the future, to claim or refuse to claim a set-off, just as it pleased. It was under no obligation to claim one, and might never wish to do so. Non constat that the Hosiery Company would own the property when the mortgage fell due; or, if it did, would wish to pay the mortgage debt for which it was not individually liable; or would have means to pay it, even if it so wished. The considerations stated exclude the idea of a then existing right of set-off, which, in the absence of an express agreement to that effect, would have prevented the Hosiery Company from drawing on its bank account, and the bank from selling the mortgage. It is reasonably to be inferred that the Hosiery Company perferred to· retain its status as a depositor until such time as it chose to act. By so doing it always had ready money to meet its immediate needs. When the bank failed, this desirable status was destroyed, and hence, in order to obtain a preference over other depositors, it, for the first time, claimed a right of set-off. Unhappily for it, the rights of the certificate holders had then accrued.

It is clear from the foregoing that a valid title passed to the certificate holders at the time of their purchase; that it was unaffected by any supposed claim on the part

of the Hosiery Company; and that to have obtained a declaration of no set-off at that time would have been a useless formality. Moreover, if the certificate holders had seen the mortgage before they bought their certificates, they would have ascertained that it was executed by the five individuals who were the mortgagors, apparently in their own right; and, if they had then inquired of the bank, would have learned that none of them had any claim against it. This was, perhaps, as far as they were called upon to go; but if the bank had also told them that the Hosiery Company was the owner of the property, subject to the mortgage, and they had gone to it, they would then have learned that nothing had been paid on the mortgage, no claim of set-off had been made, and, so far as we are advised, that there was no outstanding agreement in regard to it. The effect of a declaration of no set-off would not have gone beyond this; hence none was needed and the admitted title which the bank conveyed by the mortgage certificates was good as against the Hosiery Company.

It follows that there is an equity in the certificate holders, who will be injured if this set-off is allowed, and hence, under the cases above cited, it should be refused.

The decree of the court below is reversed, the petition for the allowance of a set-off is dismissed, and the record is remitted that further proceedings may be had not inconsistent with this opinion.