Gordon, Secretary of Banking, *v.* Anthracite Trust Co. (et al., Appellant).

Argued March 4, 1935. 

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harold A. Scragg,* with him *Robert E. Scragg,* for
appellant.

*J. M. Gronfine,* for appellee.

OPINION BY PARKER, J., April 22, 1935:

The questions for our determination on this appeal
arose on exceptions to an account filed by the Anthra-
cite Trust Company which had been taken over by
William D. Gordon, Secretary of Banking in charge
of closed state banks and trust companies. The matter
was presented on a stipulation of facts, from which
we will state the essentials.

Isidore Levine, Ellis M. Spoont, and Rose Spoont,
in May, 1930, applied to the Anthracite Trust Com-
pany [hereinafter referred to as trust company] for
a mortgage loan of $8,400. The loan was granted and
bonds and a mortgage were delivered to the trust com-
pany, and the mortgage was duly recorded. A treas-

urer's check for $8,400 was made to the mortgagors and endorsed by them to the mortgage department of the trust company for distribution. A certificate of deposit in the sum of $1,400 was purchased from the banking department, made to the order of the mortgagors, and endorsed by them on the back to the trust company and thereafter held by it. These things were done by virtue of an oral agreement between mortgagors and mortgagee whereby it was provided that the certificate of deposit must be purchased and assigned to the trust company, that no withdrawals of any kind could be made against it, and that the loan would not be granted unless the $1,400 was left with the trust company under these conditions. A receipt was given for the certificate of deposit in the following form: "May 17, 1930, Scranton, Penna. Received from Isidore Levine, Ellis M. Spoont and Rose Spoont, Certificate of Deposit Number 1050 issued by the Anthracite Trust Company, dated May 3, 1930, to said Isidore Levine, Ellis M. Spoont and Rose Spoont, in the sum of Fourteen Hundred ($1,400) Dollars to be held as collateral security for a mortgage loan in the sum of Eighty-four Hundred ($8,400) Dollars made May 3, 1930, by said Anthracite Trust Company to said Isidore Levine, Ellis Spoont and Rose Spoont secured by bonds and a mortgage dated May 3, 1930, said certificate of deposit to be surrendered by us on payment of said bonds and mortgage in full and surrender of this receipt. Anthracite Trust Company, by Chas. McMeans, Asst. Trust Officer."

In September, 1931, the trust company closed its doors and the Secretary of Banking took it over. Thereupon the exceptants requested the trust company, through the Secretary of Banking, to set off the $1,400 held as collateral against the $8,400 borrowed. The bank notified the mortgagors that only $400 of the face amount of the mortgage remained with it, the

other $8,000 having been sold to outside interests in the form of mortgage certificates. No notice of these assignments had been received by the mortgagors prior to the time the bank was closed. It was stipulated that "the legal effect of said certificates was to create a trust wherein the bank was trustee of said mortgage (including a part of the one in dispute here) and the certificate holders stand in the position of *cestui que trustent.*"

A credit of $400 was allowed and the balance of the credit claimed was refused. When the mortgagee, by the Secretary of Banking, filed its account, exceptions were taken to the refusal to allow the full credit of $1,400. The exceptions were sustained and the exceptants were allowed the additional credit of $1,000. Thereupon the Odd Fellows Hall & Cemetery Association of Scranton petitioned the court for leave to intervene, alleging that it was the owner of certificates for $7,000 of face value of the mortgage. The petition to intervene was allowed, and that organization has prosecuted this appeal.

The ultimate question here involved is whether at the time the assignee of the mortgage took an interest therein there was an *existing right* in the mortgagors to make the defense here interposed. If such right was complete and not a mere "inchoate right of set-off," it follows that the defense is available against the assignees, certificate holders. It is settled beyond doubt in this state that an assignee of a mortgage who takes the same without obtaining a declaration of no set-off or even making inquiry of the mortgagor as to any defenses takes the mortgage subject to any "then existing rights" of the mortgagors: Kountz v. Kirkpatrick & Lyons, 72 Pa. 376; Earnest v. Hoskins, 100 Pa. 551; Theyken v. Howe Machine Co., 109 Pa. 95; Bank v. Roessler, 186 Pa. 431, 40 A. 963; Levy v. Gilligan, 244 Pa. 272, 275, 90 A. 647. An examination

of the facts shows that there was at the time the participating certificates were issued an existing valid defense available to the mortgagors as against the mortgagee. When the loan was granted and settlement was made the mortgagors received only $7,000. They were required to execute a mortgage for $8,400 and pay interest on that sum. While the trust company went through the form of drawing a check for $8,400 and a certificate of deposit for $1,400 and having the certificate endorsed back to it as a condition of the making of the loan, it gave to the mortgagors only $7,000 and required the certificate to be left with the trust company, without any right on the part of the mortgagors to draw thereon. Only one reasonable inference can be deduced from the facts and that is that the plan was a mere scheme or subterfuge to exact usurious interest. While the agreed statement of facts does not indicate the rate of interest that was paid, we think it reasonably certain from the unchallenged statements at bar and the opinion of the court below that the mortgage did provide for the payment of full legal interest. We think no one would question the right of the mortgagors to have interposed this defense if the contest had been between them and the trust company alone. The question here involved is not one of set-off, but it is a defense arising out of the dealings of the parties in this very matter, a right which was complete when the loan was closed, requiring nothing further to be done in order to take advantage of it. It follows that the defense was available against the assignees.

We have the rather unusual situation of the appellant and appellee and the court below relying upon the same decision of the Supreme Court, U. S. Bank & Trust Co. Case, 311 Pa. 320, 166 A. 871, to sustain their respective contentions. There a trust company had sold participating certificates against a mortgage;

the trust company closed its doors and the mortgagor sought to set off a balance in a checking account in the trust company against the loan, notwithstanding the previous assignments. There, as here, it was agreed that the trust company was a trustee for the assignee of the mortgage and it was held that the mortgagor was not entitled to the set-off claimed. The reasons assigned for the decision were that the mortgagee did not agree not to sell the mortgage and the bank held a sum of money on deposit subject to check which it undertook to pay whenever the depositor decided to use the same, and since the mortgagor, prior to the assignment, had not changed that arrangement by exercising "its inchoate right of set-off," it was not entitled to the credit against the assignee. Here we have a materially different situation, for the mortgagors never received but $7,000 and that pursuant to a previous agreement that they should receive no more until the loan was repaid. In fact, they did not receive more. Mr. Justice SIMPSON, in writing the opinion for the Supreme Court, made plain the facts which distinguish that case from this one when he said (p. 325): "Had there been a failure of consideration in whole or in part, or had the amount due been reduced in any way, or the time of payment extended, or anything else actually done by which the bank and the Hosiery Company were both then bound, the certificate holders' rights would have been subject thereto, but nothing of this character appears." In this case, the mortgagee failed to pay to the mortgagors $1,400 of the sum for which the bonds and mortgage were given, which fact furnished to the mortgagors a valid and existing defense before the assignment was made and was therefore available against the assignee. We are of the opinion that that case is not authority for the position of appellant and that, on the contrary, the reasoning of the case supports the conclusion that we have reached.

550

The case of Earnest v. Hoskins, supra, involved principles bearing a marked similarity to the case we are considering. There mortgages were foreclosed and judgments entered when the mortgages and judgments were purchased by a third party without inquiry of the mortgagors as to whether they had any defense. On petition of the mortgagors, the judgments were opened for the purpose of making a defense. It was alleged that when the original loans were made they were made on condition that the mortgagors buy from the mortgagee a piece of land at an exorbitant price, that this was done for the purpose of covering up a usurious transaction, and that usurious interest had been paid prior to the assignment. The Supreme Court held that these defenses were available against the assignee.

It was stipulated by the parties that if the mortgagors were entitled to a credit of full $1,400, then they should be entitled "to credit for interest overpaid to the mortgagee on the basis of Seven Thousand ($7,000) Dollars instead of Eight Thousand ($8,000) Dollars." We are of the opinion that the court below correctly allowed not only a credit for the additional thousand dollars, but for interest paid in excess of $7,000 computed at the legal rate of interest.

The order of the court below is affirmed at the cost of the appellant.