## Kisinger *v.* Pennsylvania Trust Company of Pittsburgh et al., Appellants.

Argued May 1, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Charles H. Sachs,* of *Sachs & Caplan,* for appellants.

*George L. Eynon,* of *Shoemaker & Eynon,* for appellee.

OPINION BY PARKER, J., July 18, 1935:

Harry Kisinger presented to the court below a petition for a declaratory judgment to have determined his claim of a right to offset deposits which he had in the Pennsylvania Trust Company of Pittsburgh (hereinafter referred to as Pennsylvania Trust) against a mortgage previously given to that company, after the trust company had been taken over for liquidation by the Secretary of Banking of the Commonwealth. All parties whose interests were affected were made parties to the proceeding. The court of common pleas made an order upholding plaintiff's claim, and the defendants affected by the order have appealed to this court.

The facts essential to a determination of the issues are not in dispute and may be logically divided into two parts, one concerning the facts depended upon by plaintiff and the other the facts more particularly depended upon by the appellants. We will so refer to the evidence rather than dealing with it chronologically. In 1931, Harry Kisinger purchased a parcel of land in Pittsburgh, Allegheny County, which was subject to a mortgage of $5,000 dated April 20, 1917, to Pennsylvania Trust and payable in five years from that date. A short time prior to February 16, 1932, that trust company, acting through its assistant trust officer who was authorized to conduct negotiations respecting ex-

tension of time of payment of mortgages, notified plaintiff that they would require payment of the mortgage in full. After some discussion, at a second meeting the authorized agent of the trust company "offered to extend the time of payment for three years, provided Kisinger would give his own bond to secure the mortgage debt, would pay $100 on principal every three months, and would open and maintain a deposit account with Pennsylvania Trust Company. At the same time, Hoelzle [the agent] falsely assured Kisinger that Pennsylvania Trust Company owned the mortgage on his property in its own right, and in response to Kisinger's suggestion that the Trust Company might not be in good financial condition, promised and agreed that if the company should be closed his monies on deposit would be applied toward payment of the mortgage" (6th Finding of Fact). Although the agent assured the plaintiff that the bank was the owner of the mortgage in question in its own right and not as trustee, the plaintiff caused the record to be searched and found such to be the fact. Thereupon, Kisinger accepted the offer, opened an account, and made a deposit in Pennsylvania Trust on February 16, 1932. On May 31, 1932, the Pennsylvania Trust gave to plaintiff a written paper extending the time for payment of the mortgage and providing for the payment of $100 to be made each and every three months with interest, until debt and interest were fully paid. On June 6, 1932, plaintiff gave to the Pennsylvania Trust his personal bond guaranteeing the payment of the mortgage as required by the oral agreement just referred to. On March 4, 1933, the Pennsylvania Trust was placed upon a restricted basis and, on November 29, 1933, the bank was closed and the liquidation of its assets was undertaken by the Secretary of Banking of the Commonwealth. Deposits were not available to depositors generally after the bank was closed in March, 1933. When the bank was closed, plaintiff had on deposit in that trust company

the sum of $1,258.18 in a savings account and $174.48 in a checking account. The mortgage continued at all times up to the closing of the bank to stand on the record in the recorder's office of Allegheny County in the name of Pennsylvania Trust Company of Pittsburgh.

With reference to the facts depended upon by the appellants, it appeared that in June, 1917, the mortgage was assigned by the bank to an estate for which the Pennsylvania Trust Company was guardian. It was subsequently assigned by that estate to a mortgage pool where it continued to remain until after the time when the bank was placed upon a restricted basis. On July 15, 1932, it was assigned by the pool to the Pennsylvania Trust Company and two other defendants, guardians of the estate of J. H. Reich, a minor. These transfers of the mortgage were evidenced by declarations of trust and entries on the books of Pennsylvania Trust, but were not recorded until the bank was closed. The orphans' court of Allegheny County made an order directing the Pennsylvania Trust to place all of its trust assets in the custody of the Colonial Trust Company, which trust company has continued to hold the mortgage, acting in the nature of a conservator.

The appellants contend that the final order should be reversed for the reasons that (1) the Pennsylvania Trust was not the owner of the mortgage at the time the alleged agreement was made; (2) the conversations between plaintiff and defendant's agent did not amount to a contract; (3) under the parol evidence rule, the written agreement for an extension of the mortgage comprised the entire contract between the parties; and (4) the defendant is not entitled to a set-off because he did not make claim to exercise such right before the Pennsylvania Trust was taken over by the Banking Department.

1.    The law is well settled in this state that a mort-

gagor, in payment of interest and principal and any other matters affecting the mortgage security, may deal with the original mortgagee or his recorded assignee without the peril of being called upon again to respond for the same matter to an assignee who has or has not recorded his assignment if the mortgagor has not had actual notice thereof. "The assignment of a mortgage by an instrument duly executed, or the assignment of such mortgage on the margin of the mortgage record is not such legal notice to the mortgagor as will preclude him from setting up payments made by him to the mortgagee before he has actual notice of the assignment": Kinch v. Fluke, 311 Pa. 405, 409, 166 A. 905; Binkley v. Hartman, 4 S. & R. 175; Brindle v. M'Ilvaine, 9 S. & R. 74, 77; Foster v. Carson, 159 Pa. 477, 28 A. 356; O'Maley v. Pugliese, 272 Pa. 356, 359, 116 A. 308; Lee v. Sallada, 7 Pa. Superior Ct. 98. If the assignees of this mortgage, the guardians of the minor, J. H. Reich, wished to protect the interests of their ward, they should have taken a certificate of no defense and advised the mortgagor of the assignment. We find no merit in the suggestion that the Act of April 11, 1929, P. L. 512 (15 PS 2514), changed the situation in the least. At best, the position would not be any stronger than that of one who had recorded his assignment, and, as we have seen, such recording without actual notice to the mortgagor does not affect the right of the mortgagor to deal with the previous mortgagee. In any event, that act did not make a declaration of trust filed with the trust department of the bank the equivalent of recording. The Act of 1929 is a supplement or amendment to the banking act intended to prescribe a practice to be followed by banks subject to the laws of this Commonwealth who also act as fiduciaries in their dealings between trust and commercial departments and did not amend the recording acts.

2. It is next urged that the conversations between

the plaintiff and the agent of the Pennsylvania Trust did not constitute a valid contract for the reasons that the undertaking to open an account with Pennsylvania Trust was indefinite, and those conversations will not support the sixth finding of fact, the relevant portion of which we have recited above. A careful examination of all the testimony convinces us that this finding is fully warranted and amply sustained by the evidence. Harry Kisinger very candidly stated to the bank that he did not wish to open an account with that institution because he had heard rumors that it was in difficulty. This was a strong statement and reflected seriously on those operating the bank. When this suggestion was made, a very definite proposition was made by the agent that Kisinger should have a set-off to any account he opened in the bank if it should close its doors. Notwithstanding this testimony by the plaintiff, corroborated by two witnesses apparently reputable, none of the bank officers made any denial of such fact. But the appellant says that even though the statement was true, it was too indefinite to form the basis of a valid contract, as Kisinger might have deposited one dollar or five thousand dollars and still complied with his agreement. "The indefiniteness of promises is important not simply because of the inherent difficulty of enforcing a promise to which no exact meaning can be attached, but also because such a promise is insufficient consideration for another promise": 1 Williston on Contracts 81. However, we have here a contract which is not executory but in which an indefinite undertaking has been made definite by performance. Kisinger complied with his agreement by accumulating over $1,400 in the Pennsylvania Trust. Considering such a situation, Mr. Williston says (p. 82) : "It may be supposed, however, that such an agreement is performed either wholly or partly by one party or the other. Let it be supposed first that the promise which originally

was definite is performed, this cannot make the indefinite promise enforceable but may give rise to a quasi-contractual obligation to pay the fair value of what has been given. If, however, the side of the agreement which was originally too vague for enforcement becomes definite by entire or partial performance, the other side of the agreement (or a divisible part thereof, corresponding to the performance received), though originally unenforceable, becomes binding." Apparently, Kisinger performed his agreement to open an account with the Pennsylvania Trust to its entire satisfaction, but the Pennsylvania Trust contracted to allow him an offset in case of the insolvency of the bank for such sums as he then had on deposit. The question is one involving the sufficiency of consideration, and the principle upon which such contracts are enforced is very much the same as that controlling the enforcement of gratuitous promises. See Langer v. Superior Steel Corp., 105 Pa. Superior Ct. 579, 161 A. 571; also, Restatement of Law of Contracts, p. 90.

3. It is next suggested that under the parol evidence rule, particularly as recently re-affirmed by the Supreme Court of this state in the case of Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 126 A. 791, where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement. As we have shown in the statement of facts, the alleged oral agreement was made in February of 1932. On May 31, 1932, an agreement of extension in writing was delivered to Kisinger. On June 6, Kisinger gave to the Pennsylvania Trust his personal bond for the amount due. As is pointed out by Professor Wigmore (5 Wigmore on Evidence, §2430), "The most usual controversy arises in cases of partial integration, i. e. where a certain part of a transaction has been embodied in a single writing, but another part has

been left in some other form. Here obviously the rule against disputing the terms of the document,* will be applicable to *so much of the transaction as is so embodied, but not to the remainder.*" In the Gianni case (p. 323), our Supreme Court thus stated the principle: "The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and if it appears to be a contract complete within itself 'couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing. ' " Professor Wigmore suggests three propositions to be employed in searching for a general test in this inquiry: (1) "Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto." (2) "This intent must be sought where always intent must be sought, namely, in the *conduct and language* of the parties and the *surrounding circumstances.* The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover." (3) "In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation." (Cited with approval in the Gianni case.)

When we refer to the extension agreement,* printed

---

\* Original Mortgage ........$5,000.00
Payment ................ 100.00

$4,900.00

in the margin, we find that it does not appear to be a contract complete within itself, for at the outset it recites that it is made for value received without indicating in any respect what that value was. The extension agreement does not pretend to deal with any other subject than the time when the payments were to be made. It did not vary, change, or alter and was not inconsistent with the alleged oral agreement. In addition, it appears indisputably that the extension agreement was not the entire agreement, for at about the same time the plaintiff gave his personal bond to guarantee the payment of the indebtedness. This bond is not printed in the record, and we do not know its terms. The oral undertaking upon the part of the

Pittsburgh, Pennsylvania.
May 31, 1932.

For value received, the undersigned, being the owner and holder of the mortgage hereinafter mentioned and the bond accompanying the same, hereby agrees to extend the time of payment of the same for three years from April 20, 1932, with the understanding and agreement that a payment of $100.00 be made each and every three months, commencing October 20, 1932, interest thereon to be payable as in said bond and mortgage provided until the debt and interest be fully paid, and the provisions of said bond and mortgage in all other respects to remain unchanged.

Said mortgage made by Miss Margaret Carsten to the Pennsylvania Trust Company of Pittsburgh formerly the South Side Trust Company of Pittsburgh, assumed by Harry Kisinger, is dated April 20, 1917, and is recorded in the Recorder's Office of Allegheny County, Pennsylvania, in mortgage Book, Vol. 1601, Page 565.

It is hereby mutually understood and agreed that this Extension applies only to the parties hereto and is not effective as to any subsequent purchaser of the mortgaged premises unless the written consent of the mortgagee has been obtained thereto.

Pennsylvania Trust Company of Pittsburgh,
By Avery J. Bradford, President.

City and County Tax receipts shown up to and including 1932.
Accepted by Harry Kisinger.

plaintiff to open an account in Pennsylvania Trust and the agreement of that bank to allow such deposits as an offset in case the bank was closed were not mentioned, covered, or dealt with in the extension agreement. In fact, it was most natural that it should not be placed in writing at least at the instance of the bank, for it was an example of a too common practice in the past whereby banks have endeavored to secure a return in addition to the lawful rate of interest by requiring the mortgagor to maintain deposits with it. Viewing the language of the extension agreement, the conduct of the parties, particularly the order in which the agreements were made, we are of the opinion that the extension agreement was not intended to embody the entire agreement of the parties and that the parol evidence rule, as announced in the Gianni case, does not apply.

4. Finally, it is urged that because the right of set-off was not claimed before the bank closed its doors it was a mere inchoate right not completed and therefore not now enforceable against a purchaser of the mortgage. To sustain this proposition the appellant depends upon the U. S. Bank & Trust Co. Case, 311 Pa. 320, 166 A. 871. It was there held that the right of set-off is an exercisable and not a fixed or natural right, and until the right is exercised *in the absence of an agreement to the contrary* either party may freely alienate the property to which set-off might have been applied. There, as here, the dispute was between the mortgagor and an assignee of the mortgage where the mortgagor had not had notice of the sale of the mortgage before he claimed his right of set-off, but in the U. S. Bank & Trust Co. Case, supra, the right of set-off did not come into existence until after the transfer had been made. In the case of Gordon v. Anthracite Trust Co., 117 Pa. Superior Ct. 544, 178 A. 406 (opinion handed down April 22, 1935), we said: "The ultimate

question here involved is whether at the time the assignee of the mortgage took an interest therein there was an *existing right* in the mortgagors to make the defense here interposed. If such right was complete and not a mere 'inchoate right of set-off,' it follows that the defense is available against the assignees, certificate holders. It is settled beyond doubt in this state that an assignee of a mortgage who takes the same without obtaining a declaration of no set-off or even making inquiry of the mortgagor as to any defenses takes the mortgage subject to any 'then existing rights' of the mortgagors."

In the case at bar, the proofs were not limited to a claim of a right of set-off in the future, but it was definitely agreed, as the court below has found as a fact, that if the Pennsylvania Trust was closed plaintiff's monies on deposit should be applied toward payment of the mortgage. This was supported by evidence showing that the officer of the Pennsylvania Trust said: "Whatever you deposit here now, if anything happens to this bank, it will go towards your mortgage." This was a very different situation than that which existed in the U. S. Bank & Trust Co. Case, supra, where the mortgagor had the mere right to claim an offset but did not do so until after the transfer.

The order of the court below is affirmed at the cost of the appellant.