## Lancaster Trust Company, to use, *v.* Engle, Appellant.

Argued December 4, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*B. M. Zimmerman,* of *Zimmerman, Myers & Kready,* for appellant.

*Charles L. Miller,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 2, 1940:

The question to be decided is whether a written agreement of settlement or release entered into between appellant and his creditors operated as a release of a mortgage bond held by one of them and subsequently assigned by him to appellee. The court below held the bond was not discharged and denied appellant's petition to open the judgment which had been entered upon it against him.

In 1933 appellant was indebted to various banks in Lancaster. They held notes and mortgages against him. A written agreement between appellant and four of these creditors was entered into on October 2, 1934. In this agreement appellant was party of the first part; the seven liquidating trustees "in possession of certain assets of the Lancaster Trust Company" were the parties of the second part; another bank and an individual were third and fourth parties; and the State Secretary of Banking as Receiver of the Lancaster Trust Company was the party of the fifth part. After naming the parties, the agreement in separate paragraphs recites appellant's obligations to each creditor. In the case of the liquidating trustees, the recital is in the most general terms, referring to appellant's indebtedness "as maker and/or endorser, and/or guarantor on certain promissory notes and mortgage bonds," for which the trustees held collateral security, "the said

indebtedness amounting in the aggregate to a large sum." There was no reference in this clause to any particular debt or obligation of appellant. On the other hand, the recital as to the fifth party, the receiver, is wholly specific, reading as follows: "And whereas, the said Engle is indebted to the party of the fifth part on a certain bond, secured by a mortgage on the said premises Nos. 146-150 East King Street, Lancaster City, being a second mortgage, in the amount of $40,000."

After the recitals follow four paragraphs in which are mentioned the consideration to be paid by appellant to each of the other four parties for their release, to wit: to the second parties (the liquidating trustees), release of the collateral security and $21,666.67 in cash; to the fifth party (the Secretary of Banking, as receiver of the same bank), $500 in cash. These are followed by four sub-paragraphs stating what reciprocally the four creditors agree to do. The separate paragraphs for the second parties and for the fifth party are identical and state that they or he "will release [appellant] of and from any and all existing indebtedness or liability owing to or held by them [or him], upon which [appellant] is bound as maker and/or endorser and/or guarantor, including all promissory notes, mortgage bonds, mortgages or other obligations of whatsoever character . . . in full discharge of his several or joint and several liabilities to the said" trustees (or receiver).

Other significant provisions of the agreement are to the effect that in giving their release the second parties, the liquidating trustees, do not agree to release certain other parties, who are named, from their joint and several liability with appellant on certain notes, and fifth party, the receiver, does not intend to release or waive his rights against the co-makers of the bond and mortgage on the East King Street property in Lancaster.

The settlement agreement was duly carried out by the parties. Appellant's co-makers on the notes and the East King Street mortgage signed a written agreement to

remain liable, notwithstanding appellant's release. This was for the protection of appellant's creditors, who were parties to the settlement agreement of October 2, 1934. Subsequently, on November 1, 1934, the fifth party thereto, the Secretary of Banking as receiver, executed a formal written release of appellant from his liability on the East King Street bond and mortgage, but reserving all rights against other parties liable thereon. At about the same time the receiver secured the entry of a court order approving the settlement as to appellant's liability on the East King Street mortgage, but not as to any other liability of appellant to the bank.

In 1927 appellant and one William A. Brinkman had given a $45,000 bond and first mortgage to the Lancaster Trust Company on certain property located on East Chestnut Street, Lancaster. The Lancaster Trust Company discontinued business in January, 1932. Its trust assets were segregated and taken possession of by the Secretary of Banking as receiver. Among these trust assets was the East Chestnut Street bond and mortgage, and at the date of the settlement agreement, October 2, 1934, this bond and mortgage was held by the secretary as receiver, a party to that agreement. The closed bank's commercial assets passed to the liquidating trustees, likewise parties to the agreement. A short time after the agreement was entered into, the present appellee, the newly organized Farmers Bank and Trust Company, was appointed substituted trustee of the trust assets and under court authority took an assignment of the same, including the East Chestnut Street bond and mortgage, from the Secretary as receiver. In May, 1938, learning of appellant's denial of liability thereon, appellee entered his bond of record as a judgment and took the necessary legal steps to proceed against the estate of the co-maker, Brinkman, recently deceased. Appellant filed a petition to open the judgment, claiming that the bond and mortgage had been released by the settlement agreement of October 2, 1934, although not specif-

ically mentioned therein. Depositions were taken, in which appellant and his counsel, who negotiated the settlement, testified they had no knowledge that the East Chestnut Street mortgage was held by the Secretary of Banking, as receiver in possession of the trust assets of the bank. They knew, however, that the trust assets were in his hands and that the commercial assets were in possession of the liquidating trustees. There was, apparently, no discussion of the East Chestnut Street mortgage, or as to which of the two divisions of the closed bank's assets comprised it. Appellant and his attorney were not aware, they said, that trust participations in this mortgage had from time to time been sold to third parties, to such extent that the bank itself retained no beneficial ownership of the mortgage. All they knew was that the bank still owned the mortgage.

The court below held on the foregoing facts that the settlement agreement did *not* discharge appellant's liability on this obligation and refused to open the judgment. With its conclusion we agree. The East Chestnut Street mortgage was originally part of the assets of the Lancaster Trust Company. When the trust company failed, its assets were divided; part of them passed to the liquidating trustees, the balance, including this mortgage, to the Secretary of Banking as receiver. There could have been no release of the bond and mortgage, as between appellant and the liquidating trustees, because the latter did not hold the mortgage. It was not an obligation due by appellant to the trustees when the settlement agreement was entered into. That appellant did not know whether or not the trustees held the mortgage is immaterial. If in entering into the agreement he intended to secure a release of this obligation from the liquidating trustees, believing them to be the holders, he should have made inquiries and found out whether they did in fact hold it. In this way he could have protected himself. If in dealing with the trustees he had been dealing with the original mortgagee, with-

out notice of any assignment to other parties, the general words in the agreement might have operated as a release of the mortgage, and the cases cited by appellant would have had some application: *Kinch et ux. v. Fluke et al.,* 311 Pa. 405, 166 A. 905; *Kisinger v. Penna. Trust Co.,* 119 Pa. Superior Ct. 16, 180 A. 79. But instead he dealt with the liquidating trustees, to whom the mortgage might or might not have passed by operation of law, and appellant took no steps to ascertain the real situation. He was certainly on notice that the original mortgagee, the bank itself, was no longer the holder of the mortgage, and that it had passed either to the trustees or to the receiver. There is no basis for appellant's contention that a discharge was effected because of the general language used in the releasing clause referring to his obligations held by the liquidating trustees.

It is urged, however, that the releasing clause in the agreement used with reference to the receiver (the fifth party) is equally general in its language and that, since the receiver admittedly was the holder of the mortgage, discharge must have resulted. It is anomalous for appellant to contend, first, that he intended to secure a release from the liquidating trustees, which excludes any possibility of a release by the receiver, and then, if this was not so, that he intended to have the receiver release him. In addition to this, however, we find the contention ill supported either in the agreement itself or in the situation of the parties. Their intention must, of course, be controlling. As already pointed out, the preliminary recital in the agreement, as it refers to the obligations of appellant held by the receiver, mentions only one, and that one *specifically,* the East King Street second mortgage. As to the second and third parties the recitals are general. As to the fourth party, who held the first mortgage on the East King Street property, the recital is specific and refers to that obligation alone. The inference is obvious that if the agreement was intended to release any *other* obligation held by the re-

ceiver the parties either would have made specific reference to it or would have used appropriate general language similar to that used elsewhere in the agreement. It is true that the release clause is general and would include any and all obligations due the receiver from appellant. But it *follows* a recital which is *specific* in its phraseology and which referred to the only subject matter with which apparently these two parties meant to deal. The rule in such cases is that words of general application used in a release, which follow a specific recital of the subject-matter concerned, are not to be given their broadest significance but will be restricted to the particular matters referred to in the recital: 53 C. J. 1241 ("Release," sec. 61) ; 27 R.C.L. 398; *Shepley v. Lytle,* 6 Watts 500, 505-506; *Matlack's Appeal,* 7 W. & S. 79; *Heiser v. Reynolds,* 263 Pa. 434, 106 A. 888.

Other considerations may be pointed out. One is that the concluding paragraphs of the settlement agreement contain an express reservation of the creditors' rights against certain parties who were jointly and severally liable with appellant on the East King Street mortgage and other obligations, whereas there is no reservation as to the receiver's rights against William A. Brinkman, appellant's co-obligor on the East Chestnut Street mortgage. Undoubtedly, if the parties intended a release of this mortgage the receiver would have been studious likewise to reserve his rights in this connection. Moreover, the consideration for the release to be given to the receiver was only $500—an amount apparently commensurate with the only nominal value of the second mortgage which he held on the East King Street property,—whereas the first mortgagee received $2,000. It may be doubted whether the receiver would have agreed to release *in addition* appellant's obligation on the first mortgage on the East Chestnut Street property, for so small a sum. Shortly after the settlement agreement was signed, the receiver gave appellant a formal

release of his indebtedness on the East King Street mortgage, which recited the payment of the $500 as the consideration for "this release," and no other. He never gave any specific release of the East Chestnut Street mortgage. Nor did he endeavor to procure court authority to do so, as the statute would have required him to: Department of Banking Code of May 15, 1933, P. L. 565, sec. 716 (71 P.S. sec. 733-716). Appellant for nearly four years made no effort to procure a formal release of his debt on the latter mortgage.

No question of laches is here involved. The fact that the receiver and his successor in interest, appellee, did not enter the bond as a judgment or take other legal steps is of no consequence. The court below was not guilty of abuse of discretion in holding that no release of the bond and mortgage was effected and thereupon refusing to open the judgment. See *Sferra et al. v. Urling et al.*, 324 Pa. 344, 188 A. 185; *Schuylkill Trust Co. v. Sobolewski*, 325 Pa. 422, 190 A. 919.

The order is affirmed.