Blair's Estate *v*. Appliance Service Company, Appellant.

Argued May 6, 1940.

Before KELLER,

P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

S. L. Fuss, with him Duff, Scott & Smith, for appellant.

Benjamin E. Friedman, for appellee.

OPINION BY KELLER, P. J., October 4, 1940:

This is an appeal by a tenant from an order of the court below, discharging a rule to show cause why a judgment in ejectment, confessed under a warrant of attorney contained in a lease, and writ of habere facias issued thereon, should not be opened. The court below refused to admit in evidence and consider a letter written by the lessor to the tenant, and parol evidence of conversations leading up to the letter, in announced reliance upon the rule laid down in *Gianni v. Russell & Co.*, 281 Pa. 320, 126 A. 791. In our opinion the rule was misapplied, and the evidence was admissible, and required the opening of the judgment.

510

The appellant, Morris Weisberg, trading as Appliance Service Company, rented from Porter & MacDowell Company, agent for the Estate of William R. Blair, deceased, a storeroom, No. 12 Federal Street, Pittsburgh, for five months beginning December 1, 1936 at a rental of $25 per month. The lease was signed on behalf of the lessor by D. H. Thompson.

The adjoining storeroom, No. 10 Federal Street, was leased on January 5, 1937, through the same agency, acting for the Blair Estate, by D. H. Thompson, to Appliance Service Company for the term of one year beginning May 1, 1937 for the rent of $600, payable monthly in advance at the office of Porter & MacDowell Co. This lease contained the following clause: "The Tenant . . . . . . covenants and agrees to vacate the said premises at any time upon receiving sixty days' notice in writing so to do, in case of sale." This clause was not inserted in the prior lease for the adjoining property, No. 12, but the other agreements, conditions, waivers, etc., were practically the same in both leases.

The two rooms were made communicating by cutting a door through the wall, and were used by the lessee as a unit. They were under one roof; the facilities and utilities were measured by one meter; there was one lavatory, toilet, washroom, etc.; one heating unit; one entrance from the storerooms to the basements. One of the rooms was used by the tenant as a shop and semi-warehouse, and the other as the storeroom.

On January 17, 1938, a renewal slip was signed by the tenant, this appellant, for "the property situate at and known as 10-12 Federal St.", which renewed "the lease" for a period of one year from May 1, 1938 at a rental of $75 per month, "under the same terms and conditions and with the same waivers as provided in the original lease"; but not stating which lease was referred to.

In the fall of 1938 the appellant consulted Mr. Thompson, who was in charge of the renting of the property and had signed the leases and all the papers relative thereto, and wanted the landlord to make certain needed repairs and improvements, including, inter alia, the installation of a furnace to heat the storerooms. Mr. Thompson said he would consult the heirs, and having done so reported that they were unwilling to put any money into improvements and repairs; but on the contrary were considering asking a higher rental. The parties talked over the contemplated improvements and repairs and something was said by Mr. Thompson that their cost would about equal the proposed increased rent. After consulting his principals, he wrote Mr. Weisberg the following letter:

"October 10th, 1938.

"Mr. Morris Weisberg,
10 Federal Street,
N. S., Pittsburgh, Pa.

Dear Sir:

In consideration of the repairs made on the premises you occupy and the installation of a furnace to heat the storeroom we hereby agree to renew your present lease on the premises for a period of one year from May 1st, 1939 provided renewal is signed on or before February 1st, 1939.

It is also understood and agreed that the furnace installed is to become the property of the Landlord upon vacation of the premises by the Tenant.

Very truly yours,

Porter & MacDowell Co.
By D. H. Thompson,
Rent Manager."

When agreed to by Mr. Weisberg and acted on by him this constituted a binding agreement of renewal for the period of one year, in accordance with the negotiations between the parties.

In the course of the conversation leading up to this letter Mr. Weisberg stated that he would not go to the expense of making these improvements and repairs—which were estimated to cost between $800 and $900, unless he had an *unconditional* lease, and testified that Thompson said that if he went to that expense, he should have it. Thompson did not deny that the term 'unconditional lease' was used, but his understanding of the term did not agree with the tenant's. He admitted that Weisberg had objected to the sixty-day removal clause, in case of sale.

It was very natural that he should object to a clause in the *one* lease, which if enforced after his expenditure of $800 or $900, would deprive him of all the benefit of that expenditure and effectually destroy his business, by eliminating the storeroom.

In reliance on the letter, written after that conversation, Mr. Weisberg almost immediately installed the furnace in No. 10, for use that fall and winter, and from that furnace ran pipes which heated No. 12 also. Mr. Thompson knew that this was done. In similar reliance, Mr. Weisberg subsequently painted the storeroom, (No. 10), installed a new floor in the basement of No. 12, installed new wiring in the basement and first floor and new switches in Nos. 10 and 12, installed new stairway to the basement, painted and plastered the first floor of No. 10, installed new brick chimney in No. 10, installed new rear windows and glass at No. 10, put in new locks in both rooms, installed toilet, piping, commode and sink at No. 10, and painted cellar, at a cost of $556.34, in addition to the furnace, $300. Mr. Thompson knew of these repairs and improvements.

Subsequently, the following paper was prepared by

Thompson, that is, the insertions in the blank, which are italicized, were filled in by him or his authority:

"Void if not returned by *Feb. 28, 1939.*

PORTER & MacDOWELL CO.

Standard Life Building, 4th Ave. & Smithfield St.
Pittsburgh, Pa., *Feb. 13, 1939.*

I desire a renewal of my lease upon the property situate at and known as *10-12 Federal St., N. S., Pittsburgh, Pa.* and you are authorized to attach this application to the lease in your possession which shall thereupon be renewed for the period of *one year* from *May 1, 1939* at the rental of *$75.00* per *month* under the same terms and conditions and with the same waivers as provided in the original lease.

The Tenant agrees to repair all damage caused by freezing or any other neglect of the tenant to any water pipes during the term of the lease.

*Porter & MacDowell Co. Agent*    SEAL

Tenant *By D. H. Thompson*    SEAL

"Witness:

Appliance Service Co.
Morris Weisberg"

It will be noted that this is not a formal contract, complete in itself, "couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement", as is requisite to apply the rule excluding parol evidence of prior negotiations and agreements between the parties as laid down in *Gianni v. Russell & Co.,* supra, p. 323.

The paper was only a *request* or expression of desire for a renewal of *a lease* upon property "situate and known as 10-12 Federal St., N. S., Pittsburgh, Pa." in the form generally used for signature by the *tenant,* and when so signed by him, it authorized the landlord to attach the application to the *lease* in his possession, which should thereupon be renewed for the period agreed upon. In this case, it was signed by the landlord, and *witnessed* by the tenant. Ordinarily, we might pass by this circumstance, as a technicality, but it is important here as showing the lack of a formal contract. Strictly construed, the paper amounted to little more than a formal confirmation by the *landlord* of the renewal previously effected by the acceptance by the tenant of the letter of October 10. But, in addition, the property "10-12 Federal St.," was held by the tenant under two leases. To which one did it refer, when it mentioned the *same terms and conditions as provided in the original lease?* If it referred to the lease for No. 12, the tenant could not be required to vacate the premises on receiving sixty days' notice of sale; if to No. 10, he could, unless its terms had been modified by the letter of October 10, 1938 and its acceptance by Weisberg. No one can say that this paper is so complete in itself and couched in such terms as to import a complete legal obligation without any uncertainty as to the object or extent of the engagement. It is full of uncertainty as to its object and extent. It does not even purport to be a *contract complete within itself.* Hence the rule so clearly established in *Gianni v. Russell & Co.,* supra, does not apply in the circumstances here present: *Garrison v. Salkind,* 285 Pa. 265, 268, 269, 132 A. 125, (SCHAFFER, J.) ; *Newland v. Lehigh Valley R. R. Co.,* 315 Pa. 193, 196, 173 A. 822; *Bole v. Alden Park Manor,* 98 Pa. Superior Ct. 65, 67-69; *M. Walrath & Son v. Colonial Trust Co.,* 101 Pa. Superior

Ct. 79, 84; *Kahn v. Van Pelt*, 101 Pa. Superior Ct. 375, 380; *Lion Match Co. v. Frank & Frank*, 110 Pa. Superior Ct. 599, 601, 169 A. 13; *Howell v. Wheelock*, 115 Pa. Superior Ct. 599, 602-604, 176 A. 252; *Kisinger v. Penna. Trust Co.*, 119 Pa. Superior Ct. 16, 23-26, 180 A. 79.

The legal plaintiff and the use plaintiff, when they respectively notified the tenant that the *property* had been sold—that is, *both Nos. 10 and 12*—endeavored to apply the covenant and agreement, which was present in the lease for No. 10, but not in that for No. 12, to both leases and called upon the tenant to vacate both properties; but when the judgment in ejectment was entered, a different construction was placed upon it by the use plaintiff, and the confession was entered as if separate renewals had been written of *two leases,* authorizing the renewal of No. 12 free of the covenant for removal in case of sale but renewing No. 10 subject to that covenant, notwithstanding the letter of October 10, following the agreement of the tenant to make valuable repairs and improvements if assured of a renewal without that covenant or condition; thus ejecting the tenant from No. 10 only, and leaving him in possession of No. 12; but in so doing, destroying his business just as effectually, as the expressed desire of Pudd'nhead Wilson to own one-half of a yelping dog, so that he could kill his half, if carried out, would have disposed of the dog.

Appellant also claims that the judgment was prematurely confessed; for the covenant in the lease for No. 10 was only that the tenant should vacate upon receiving sixty days' notice so to do, *in case of sale of said property.* It is admitted that the agreement of sale was subject to the approval of the orphans' court; and the judgment was confessed before a valid, completed

agreement of sale had been entered into by securing the approval of the orphans' court. There is some force in this contention, for until the consent of the court was obtained no enforceable agreement of sale existed.

However, we rule the case squarely on the point that the "request for a renewal" (Exhibit C) was not such a complete contract and undertaking between the parties, nor couched in such terms, as to import a complete legal obligation, without any uncertainty as to the object or extent of the engagement; and, consequently, that it did not preclude the tenant from introducing into evidence the letter of October 10, 1938, which set forth the consideration for the renewal (*Cridge's Est.*, 289 Pa. 331, 338, 137 A. 455), and the negotiations which led up to its writing and acceptance.

The assignments of error, except the sixth, are sustained. The order is reversed, and the rule to open the judgment is reinstated and made absolute.